**In re S.E.T. INCOME PROPERTIES, III, Debtor.**

**Bankruptcy No. 87–02849–C.**

United States Bankruptcy Court, N.D. Oklahoma.

March 7, 1988.

Timothy T. Trump of Comfort, Lipe & Green, P.C., Tulsa, Okl., for debtor.

Andrew R. Turner of Conner & Winters, Tulsa, Okl., for Creditor, Guardian Life Ins. Co. of America.

## MEMORANDUM DECISION AND ORDER

STEPHEN J. COVEY, Bankruptcy Judge.

The debtor, S.E.T. Income Properties, III ("SET") has filed a disclosure statement and a plan of reorganization pursuant to the requirements of the Bankruptcy Code. The sufficiency of said disclosure statement comes on for hearing upon the debtor's application for approval and upon objection thereto by Guardian Life Insurance Company ("Guardian"). Guardian, a secured creditor of the debtor, has objected to the sufficiency of the debtor's disclosure statement, alleging that the disclosure statement fails to satisfy the standards as enumerated in 11 U.S.C. § 1125(b) to sufficiently enable Guardian to make an informed judgment about the debtor's plan of reorganization.

In order to confirm a plan, certain specific items must be disclosed. *See, e.g.,* section 1129(a). At a minimum, the disclosure statement must include: (a) a description of the business; (b) a synopsis of the debtor's pre-petition history; (c) certain financial information regarding the debtor's operations; (d) a description of the plan and how it is to be executed; (e) a liquidation analysis; (f) management to be retained by the debtor and such management's compensation; (g) a projection of operations, inclusive of pending litigation and transactions with insiders; and (h) tax consequences of the reorganization. *See In re Malek,* 35 B.R. 443, 443–44 (Bankr.E. D.Mich.1984). A clear showing that the plan is not confirmable justifies denial of the sufficiency of the disclosure statement to avoid the cost and delay of a fruitless venture. *In re Pecht,* 53 B.R. 768, 769–70 (Bankr.E.D.Va.1985).

Guardian has alleged that the disclosure statement lacks the requisite information in the following respects: (a) that it fails to disclose the source of the infusion of new capital which the debtor proposes or the identity of the proposed new equity holders; (b) that it fails to disclose what happened to certain payments withheld from

Guardian; and (c) that the plan as proposed offers a discount rate of less than seven percent, rendering the plan not confirmable, and hence rendering the disclosure statement not approvable due to a lack of feasibility of the plan itself. *Id.* For the reasons as expressed herein, the court finds it unnecessary to rule on Guardian's first two allegations and therefore declines to do so.

■ In the instant case, the total claim of Guardian as of the date of filing the petition for relief was $2,995.843.49 and the value of its collateral has since been determined by the court to be $1,775,000. The financial reports filed by debtor since the filing of the petition show that its net income per month has declined from $14,710 in November 1987 to $6,027 in January 1988. In its plan, debtor proposes to pay Guardian an initial cash payment of $75,000 and monthly payments in the amount of $11,300 for 180 months at an interest rate of 6.97 percent per year, followed by a balloon payment of $1,250,000 in fifteen years.

Under 11 U.S.C. § 1125(b)(2)(A)(i), Guardian must receive a stream of payments totaling the allowed amount of its claim, with a present value equal to the value of the collateral. Guardian has previously elected to be treated under section 1111(b) of the Code; thus, the face value of the payments proposed under the plan must at least equal $2,995,843.49 and have a present value of at least $1,775,000.

There is no question that the proposed payments will total more than the face amount of Guardian's claim. The only issue to be determined by the court is whether the stream of payments proposed by the debtor have a present value equal to the value of the collateral. The resolution of this issue depends solely upon the discount or interest rate the court determines to be fair and reasonable.

The court is well aware of the lack of consensus as to the appropriate discount rate. A number of rates have been utilized by various courts, including: (1) the contract rate, *In re Cooper,* 11 B.R. 391 (Bankr.N.D.Ga.1981); (2) the tax rate, *In re Ziegler,* 6 B.R. 3 (Bankr.S.D.Ohio 1980) (26 U.S.C. § 6621); (3) state or federal legal rates, *In re Crockett,* 3 B.R. 365 (Bankr.N.D.Ill.1980); (4) the legal rate plus a premium, *In re Lum,* 1 B.R. 186 (Bankr.E.D.Tenn.1979); (5) the prime rate, *In re Miller,* 4 B.R. 392 (Bankr.S.D.Cal.1980); (6) various United States treasury bill rates plus a premium, *In re Levine,* 10 B.R. 168, n. 4 (Bankr.D.Mass.1981); (8) the prevailing market rate, *Memphis Bank & Trust v. Whitman,* 692 F.2d 427 (6th Cir.1982); and (3) the rate at which the creditor could invest the funds, *In re Jewell,* 25 B.R. 44 (Bankr.D.Kan.1982) and *In re Citrowske,* 72 B.R. 613 (Bankr.D.Minn.1987).

Determination of an appropriate discount rate is undertaken by starting with the concept of present value. Present value is not a legal term but is, instead, a term of art borrowed from the financial community. *See In re Fisher,* 29 B.R. 542 (Bankr.D.Kan.1983). Present value, or as it is more commonly understood, the time value of money, simply compensates the creditor for not receiving its money today by charging an additional sum based on a rate of interest called the "discount rate." The discount rate is used to calculate how much the creditor should be paid so it will have the same amount of money in the future that it would have if it had been paid today.

Several commentators have argued persuasively that the deferred payments in a bankruptcy context are tantamount to a coerced, or involuntary loan. Under this analysis, the discount rate should reflect the rate of return that would be earned by the creditor in an arms-length transaction "with similar terms, duration, collateral and risk of default" rather than a rate of return that recognizes only the cost of the funds used in the financing. 5 Collier on Bankruptcy ¶ 1129.03 (15th ed. 1982). Collier further states that "the appropriate discount rate must be determined on the basis of the rate of interest which is *reasonable* in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration for

the quality of the security and the risk of subsequent default." *Id.* at 1129–65. [emphasis added]

Those courts of appeals which have considered the question of what constitutes an appropriate discount rate have all agreed that the above quotation from Collier states the proper rule. *See United States v. Neal Pharmacal Co.,* 789 F.2d 1283, 1285 (8th Cir.1986); *In re Southern States Motor Inns, Inc.,* 709 F.2d 647, 651 (11th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984); *In re Camino Real Landscape Maintenance Contractors,* 818 F.2d 1503, 1505 (9th Cir. 1987). However, as the *Camino* court stated, "unanimity disappears upon application." *Id.*

In light of the requirement mandating the application of a standard of reasonableness as the determinant in the formulation of an appropriate discount rate, the court finds that the prime rate, as the rate banks charge their best customers, *see In re Hildreth,* 43 B.R. 721 (Bankr.D.Idaho 1984), is an appropriate starting point in the formulation of an appropriate discount rate. The parties have stipulated that the present prime rate is eight and one-half percent.

In addition to the prime rate, the court finds that because of debtor's financial condition, the court must add an additional rate for the extra financial risk involved. Although there was no specific evidence on this issue offered by the parties, it should be noted that this debtor, due to Guardian's election of section 1111(b), is still overwhelmingly insolvent. The sole asset of the debtor has a value of $1,775,000 while the value of Guardian's secured claim, as of the date of the filing of debtor's petition for relief, was $2,995,843.49. Income, before debt service and after expenses, has fallen drastically, *infra,* making the likelihood of the debtor realizing sufficient cash flow to fund the reorganization less probable. Based on those factors, the court finds that a risk factor of one and one-half percent is reasonable.

The court's own calculations, taking into consideration a risk factor of one and one-half percent plus a prime rate of eight and one-half percent, show that the net present value to be realized by Guardian under the terms of the debtor's proposal equals only $1,425,789.12 which sum is far short of that required under the Code.

In order to appropriately fund the plan of reorganization, using a ten percent rate, the debtor would have to demonstrate an ability to make monthly payments to Guardian in the amount of $15,052.63. In light of the income and expenses of the debtor, *infra,* the probability of the debtor being able to service such debt is unlikely.

In finding an appropriate discount rate of ten percent, the court has rejected several arguments raised by the debtor. Without addressing each specific argument, it is sufficient to say that the cost of funds to Guardian is not an appropriate test. What is appropriate is the cost of funds available to the debtor. Additionally, the court rejects the debtor's argument that the treasury bill rate should be used. This is a rate available to the government making a no-risk loan, not a rate available to an insolvent debtor in the commercial market. Finally, the court rejects the arguments of the debtor that a special workout rate or rehabilitation rate should be allowed the debtor in order to help it reorganize its business. There is no authority for this argument and it would mean that the debtor could borrow funds because it was insolvent and in chapter 11 at a rate under which a solvent company could borrow money.

The court, therefore, finds, for the reasons as expressed above, that the disclosure statement, as submitted by the debtor for the court's approval, demonstrates that the debtor's proposed plan of reorganization is not feasible. Approval of said disclosure statement is therefore denied.

The clerk of court is instructed to mail copies hereof to counsel of record.