**In re ONE CANANDAIGUA PROPERTIES, INC.,**
**Debtor.**

**Bankruptcy No. 90–22631 K.**

United States Bankruptcy Court,
W.D. New York.

May 14, 1992.

C. Bruce Lawrence, Suter, Doyle, Kesselring, Lawrence & Werner, Rochester, N.Y., for debtor.

C. Bruce Kratz, Nixon, Hargrave, Devans & Doyle, Buffalo, N.Y., for Chase Lincoln First Bank.

David MacKnight, Lacy, Katzen, Ryen & Mittleman, Rochester, N.Y., for unsecured creditors' committee.

## DECISION

MICHAEL J. KAPLAN, Bankruptcy Judge.

The debtor, creditors' committee, and one creditor have asked the Court to determine the propriety under 11 U.S.C. § 1122 of the debtor's proposed classification of claims in an amended plan. They have done so in the form of a motion for leave to amend the plan, which motion has been opposed by the creditor. It is the determination of the Court that this matter is not ripe for decision.

On March 12, 1992, this Court denied confirmation of a plan of reorganization in

this Chapter 11 case because the plan placed the unsecured portion of various undersecured mortgagees in a class separate and apart from the class of ordinary unsecured creditors, yet the plan provided identical treatment for those two classes. The class of unsecured mortgage deficiency claims rejected the plan, while the class of ordinary unsecured claims voted, by an extremely slim margin, to accept the plan. At the request of the mortgagees the Court struck down the separate classification as being nothing more than an effort to gerrymand the ballot to achieve the requisite acceptance of at least one impaired class. Treating the two classes as one, the plan failed to meet that requirement. Leave was granted to amend the plan on suitable notice.

In the proposed amendment the classification remains the same, but the treatment accorded the mortgagee's unsecured deficiency claims is now different from that accorded ordinary unsecured claims in one unique regard. Although both classes are promised thirty-three (33%) percent of the principal amount of the claims over the first five years of the plan, and a pro rata share of unknown future earnings in years six through fifteen of the plan, the mortgagee class is now to retain their liens to secure any balance of the mortgage debts remaining at the end of the fifteen years.

The mortgagees ask the Court to disallow such classification, providing assurance to the Court that if this plan is ultimately voted upon, that class will vote to reject; and that even if the ordinary unsecured claims vote to accept the modified plan, and even if the separate classification is upheld, the mortgagees will invoke the "absolute priority rule" and object to the fact that stockholders will, under the plan, retain their equity interest. The debtor and the creditor's committee also asked the Court to rule now, predicting that the ordinary unsecured claims will again vote to accept the plan (thereby obtaining one "impaired" accepting class) and that no general unsecured creditor will object to the plan on "unfair discrimination" grounds with regard to the allegedly more favorable treatment being accorded the mortgagees.

There is support for the proposition that the Court may address classification disputes (and other "confirmability" issues) in advance of a hearing on confirmation, and that it in fact should do so in some circumstances.

Thus, for example, in the case of *In re Pecht*, 53 B.R. 768 (Bankr.E.D.Va.1985), the Court refused to approve a disclosure statement that described a "no-payment" plan in which the debtor would pay nothing to his unsecured creditors but retain his entire proprietary interest in his business proprietorship. The Court noted that creditors who receive nothing are deemed not to have accepted the plan; hence, resort to section 1129(b) would be required and the plan could not possibly survive section 1129(b) requirements.

Similarly, the same Court later ruled as to a subsequent plan in the same case (*In re Pecht*, 57 B.R. 137 (E.D.Va.1986)) that it could find no material difference between the earlier plan and the plan later at bar, and that consequently it would deny approval of the disclosure statement because of the nonconfirmability of the plan.

In the case of *In re S.E.T. Income Properties, III*, 83 B.R. 791 (Bankr.N.D.Okl. 1988) the Court denied approval of a disclosure statement which described a plan that on its face was not feasible.

In the case of *In re Valrico Square Limited Partnership*, 113 B.R. 794 (Bankr. S.D.Fla.1990), the Court denied approval of a disclosure statement which described a plan that separately classified the unsecured claims of two different banks (one of which had objected to the disclosure statement on classification grounds), because the disclosure statement would mislead the other bank into thinking that it would control the vote of its class. Although not expressly set forth by the Court, it appears that the plan provided identical treatment for the two classes and that the separate classification, thus, could not be sustained on any grounds.

And in the case of *In re McCall*, 44 B.R. 242 (Bankr.E.D.Pa.1984), the Court denied approval of a disclosure statement which

placed a particular creditor in the same class as general unsecured creditors despite the fact that the question of whether that creditor was an unsecured creditor or a secured creditor awaited resolution by a state court which might rule on that issue prior to any hearing on confirmation.

These cases demonstrate that there are factors which might lead a bankruptcy court to exercise its discretion to rule on "confirmability" issues prior to a hearing on confirmation, and thereby achieve economy of resources and time. It can be seen from these cases that this would typically be done where the plan of reorganization is either non-confirmable on its face, or where the issue requiring resolution will have to be resolved sooner or later, and a sooner resolution is in the economic best interest of all parties.

■ The circumstances that would prompt the Court to exercise its discretion to rule on the current issues at this time are not present. The plan is not non-confirmable on its face. And classification of the mortgagee's deficiency claims is an issue that would not have to be reached in this case at all if the plan obtains acceptance of all key creditors, or (on the other hand) if it fails on grounds other than classification. (Just as the mortgagee's objection to the classification is "promised," so too is their challenge to feasibility and other confirmation requisites.)

■ Furthermore, the Court ought not to be drawn into the process of drafting of plans. It is abundantly clear under 11 U.S.C. § 1127(a) that the proponent of a plan does not need leave of Court to modify a plan prior to confirmation, yet leave has been sought and opposed on the merits. The Court has no doubt that there is a genuine and bona fide controversy here between the creditor on the one hand, and the debtor and creditor's committee on the other. However, Congress envisioned open negotiations between the debtors and creditors, and minimal (if any) participation by the Court in that process. The current motion and response essentially ask the Court to set the parameters of these negotiations by means of something that is akin to an advisory opinion. For the Court to address the motion would be to forego the opportunity to address the ultimate confirmability of this plan on the basis of the whole spectrum of requisites to confirmation set forth in 11 U.S.C. § 1129. At a hearing on confirmation in this case, it might evolve that the general unsecured class has rejected the plan, in which case the plan will lack the requisite acceptance of one impaired class, presuming that the mortgagee class does not accept the plan. If on the other hand, the mortgagee class were to accept the plan (however unlikely that appears to be at this time), a rejection by the general unsecured class would raise an issue of "unfair discrimination" under section 1129(b).

Even if the voting goes as expected, feasibility is always at issue in Chapter 11 confirmations, and if the Court is convinced that the plan is not feasible the Court might choose to deny confirmation on that ground and to decline to reach the issue presented in the current motion.[1]

(Note that were I to rule on the current motion in favor of the debtor or creditors' committee and then at confirmation rule in favor of the bank on a different requisite of confirmation, the bank would have to appeal the Order Denying Confirmation in order to obtain review of the Order Approving Classification, which order would be proven, thus, to be one that never had to be entered.)

However elusive a global accord might be in this case—an accord by which a modified plan might win universal acceptance—the Court will leave the parties to negotiate

---

**1.** Partial summary judgment practice under Rule 56 of the Federal Rules of Civil Procedure is an example of instances in which, arguably, it is the parties rather than the Court which get to choose the issue upon which a determination will be made. However, partial summary judgment practice is in no way analogous to the situation presented here. Partial summary judgment addresses an entire cause of action. Appropriate classification is but one element of the single "cause of action" that is embodied in a request for an Order Confirming a Chapter 11 Plan.

toward that end. If, ultimately, there are disputes requiring determination at a hearing on confirmation, the Court will rule upon them as the interests of justice require.

Although a motion for leave to amend the plan was not required, it is granted without prejudice to the renewal of all objections thereto at an appropriate time.

SO ORDERED.