**In re NEW VALLEY CORPORATION, Debtor.**

**Bankruptcy No. 91–27704 (NLW).**

United States Bankruptcy Court, D. New Jersey.

May 6, 1994.

David M. Friedman, Mudge, Rose, Guthrie, Alexander & Ferdon, Jonathan Jacobson, Akin, Gump, Strauss, Hauer & Feld, New York City, for debtor.

Martin J. Bienenstock, Weil, Gotshal & Manges, New York City, for Unsecured Creditors' Committee.

Martin N. Flics, Latham & Watkins, New York City, for Official Committee of Senior Secured Noteholders.

Michael Mora, Pension Benefit Guar. Corp., Washington, DC, for Pension Benefit Guar. Corp.

## OPINION

NOVALYN L. WINFIELD, Bankruptcy Judge.

This matter comes before the court on the motion by the debtor-in-possession, New Valley Corporation ("New Valley" or "Debtor"), for an order (i) declaring that payment of allowed claims in full renders such claims unimpaired, and (ii) that the Debtor has no obligation to pay postpetition interest on unimpaired claims. The Debtor asserts as statutory predicates for the relief it seeks, 11 U.S.C. §§ 103, 105(a), 502(b), 1124, 1126(f) and 1129, Federal Rules of Bankruptcy Procedure 3007 and 9014 and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Objections to the relief sought have been filed by the Statutory Unsecured Creditors' Committee ("Unsecured Committee"), the Official Committee of Senior Secured Noteholders of New Valley Corporation ("Noteholders Committee") and the Pension Benefit Guaranty Corporation ("PBGC").

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B) & (O) and the General Order of Reference of the District Court of New Jersey, dated July 23, 1984.

## STATEMENT OF FACTS

On November 15, 1991 (the "Petition Date") an involuntary petition for relief under Chapter 11, Title 11, United States Code

(the "Bankruptcy Code" or "Code") was filed against New Valley by three individual bond-holders. Thereafter, based on the expectation that New Valley would be able to formulate a pre-packaged plan acceptable to its creditors, it received various extensions of the date to answer the involuntary petition. Its expectations unmet, on March 31, 1993 New Valley consented to the entry of an order for relief under Bankruptcy Code section 301. It has been continued in operation of its business and possession of its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On April 14, 1993, the United States Trustee appointed the Unsecured Committee which consists of seven voting members. At the suggestion of the Unsecured Committee, and with the concurrence of the United States Trustee, the PBGC became an *ex officio* member of the committee. Robert Leventhal also sits as an *ex officio* member of the Unsecured Committee.

On May 17, 1993 the United States Trustee appointed the Noteholders Committee to represent the interests of New Valley's 19¼% Senior Secured Notes due 1992.

The Debtor filed its Plan of Reorganization ("Plan") together with its Disclosure Statement on November 24, 1993. A hearing to consider the adequacy of the information contained in the Disclosure Statement was scheduled for January 28, 1994. The motion presently under consideration was filed just prior to the Disclosure Statement hearing date. Additionally, on or about the hearing date, New Valley announced its intention to modify its Plan to provide 100% cash distributions on the effective date of the Plan on the allowed claims of all of its creditors other than those whose claims are reinstated under the Plan. The Disclosure Statement hearing was adjourned to permit the Debtor to file its amended Plan. The amended Plan was filed on February 16, 1994. Additionally, the court set March 18, 1994 as the deadline for filing competing plans. Prior to the deadline competing plans were filed by the Unsecured Committee, Chelonian Corporation, and a group that denominated itself as Certain Independent Equity Holders.

The motion presently under consideration appears to have been filed in part, in response to the Unsecured Committee's motion which sought to terminate the exclusive period for the Debtor to seek acceptances of its Plan. The court had previously granted an extension of the exclusive periods until November 26, 1993, and January 25, 1994, respectively. New Valley also filed a motion to extend its exclusive period to solicit acceptances of its Plan for an additional ninety (90) days. On January 25, 1994, the court denied the New Valley request to further extend exclusivity. The court based its decision *inter alia*, on (i) New Valley's inability to negotiate a plan acceptable to its creditors despite the passage of over two years since the filing of the involuntary petition, (ii) the uniform objection of all the creditor groups to a further extension and (iii) the fact that the Unsecured Committee and the PBGC had negotiated a term sheet intended to form the basis for a jointly proposed plan of reorganization, and which appeared to be a meaningful alternative to the Debtor's Plan.

All parties agree that operationally New Valley has done extremely well during the debtor-in-possession period and that its going concern value is increasing. The parties additionally agree that because New Valley has prospered postpetition, on a going concern basis its value presently exceeds its liabilities. Indeed, it is precisely because of the apparent solvency of New Valley that postpetition interest has become an issue between New Valley and its creditor constituencies in their negotiations as to the terms of a plan of reorganization.

In essence, the Debtor objects to allowance of postpetition interest on any claim except as may be permitted under Code § 506(b). The New Valley objection rests on analysis of the interplay of sections 502(b)(2), 1124(3) and 1129(a)(7)(A) of the Bankruptcy Code and can be summarized as follows:

i. Bankruptcy Code section 502(b)(2) specifically disallows claims for "unmatured" interest as part of a creditor's "allowed" claim.

ii. Payment to creditors in cash of the allowed amount of their prepetition claims renders such creditors unimpaired pursu-

ant to Bankruptcy Code section 1124. Pursuant to section 1126(f) allowed claims are deemed to accept the plan.

iii. The "best interest of creditors" test in section 1129(a)(7)(A)(ii) does not require the payment of postpetition interest by a solvent debtor since by its plain language section 1129(a)(7)(a)(ii) only applied to impaired classes.

iv. The Bankruptcy Code has specifically addressed those instances where postpetition interest may be paid on a claim. Accordingly, to the extent that pre-Code common law provided broader rights to postpetition interest than the rights specifically set forth in the Bankruptcy Code, such pre-Code law was abrogated by the Bankruptcy Code.

The Debtor claims that a determination from the court as to whether it must pay postpetition interest to unsecured (including undersecured) creditors is of critical importance at this stage of the case. New Valley observes that both the Unsecured Committee and the Noteholders Committee have claimed a right to postpetition interest by reason of the Debtor's solvency. Additionally, it asserts that if postpetition interest is required to be paid on allowed claims it affects the Debtor's reorganization effort including its ability (i) to consummate its agreements with equity investors, (ii) to obtain financing commitments from underwriters, (iii) to provide adequate information in its proposed disclosure statement and (iv) to meet its responsibilities as a debtor-in-possession to negotiate, prosecute its plan of reorganization. New Valley Postpetition Interest Motion at pp. 2–3.

The Unsecured Committee and the Noteholders Committee have filed objections to the Debtor's motion based on the solvent debtor rule established by courts under the Bankruptcy Act. Essentially, the rule recognized that in the event of a debtor's solvency the rationale for not computing interest on claims against the estate had little vitality. Though the rule was not codified by the Bankruptcy Code the committees and the PBGC argue that it has continuing application. Additionally, the Unsecured Committee and the Bondholder Committee oppose

the motion on the ground that it is not ripe for review under the Constitution of the United States or the Declaratory Judgment Act, 28 U.S.C. § 2201.

## CONCLUSIONS OF LAW

### I. Ripeness for Adjudication

 Article 3, section 2 of the Constitution requires that the courts exercise their authority only over cases and controversies. Addressing this requirement the Supreme Court has stated in *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937):

> The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

Further, the Declaratory Judgment Act only applies to controversies which rise to this constitutional magnitude. *Id.* at 239, 57 S.Ct. at 463; *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979). Though the Declaratory Judgment Act empowers a court to declare the rights of an interested party, it does not require the court to do so. *Step–Saver Data Systems, Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d Cir.1990). The Third Circuit has distilled three basic principles for exercising that discretion: (i) the adversity of the interest of the parties, (ii) the conclusiveness of the judicial judgment, and (iii) the practical help, or utility of that judgment. *Id.* at 647. Applying the criteria to the matter at hand, the court finds that New Valley's motion is ripe for adjudication.

Both the Unsecured Committee and the Noteholders Committee rested their ripeness objections in part on the fact that at the time New Valley brought the instant motion it had not filed its amended plan. The Debtor has overcome this objection by filing an amended plan on February 16, 1994 which proposes to pay 100% of the allowed claims in cash on the effective date of the plan, together with such postpetition interest as the court may allow.

Thus, the facts which form the basis for consideration of the appropriateness of allowance of postpetition interest are not merely hypothetical. Further, the material adversity between the parties is readily evident from the sharply contrasting positions taken by the parties on the merits of the instant motion. Because the Debtor appears to be solvent on a going concern basis, both committees contend that the pre-Code solvent debtor rule applies and requires New Valley to pay postpetition interest. In contrast, New Valley argues that a straightforward application of the pertinent Bankruptcy Code sections results in the conclusion that a solvent debtor which pays its allowed claims in full is not required to pay postpetition interest on unsecured claims. Based on that reasoning, New Valley has brought the instant motion as an omnibus objection to claims and predicates its request for relief on Bankruptcy Code sections 502(b)(2), 1124(3), 1126(f), and 1129(a)(7)(A).

The positions of the parties could hardly be more adverse. Indeed, the Unsecured Committee has stated its position regarding postpetition interest in a number of pleadings filed with the court. Moreover, as noted earlier, the briefs and objections filed by the Unsecured Committee, the Noteholders Committee and the PBGC demonstrates that the adversity of the parties is both real and material.

Moreover, a decision on the right of creditors to post petition interest clarifies the rights of the parties under the New Valley plan. Particularly from the Debtor's standpoint it also permits a greater degree of certainty as to its financial obligations under its Plan and thereby facilitates its negotiations with underwriters for financing commitments, improves the ability to provide adequate information in the proposed Disclosure Statement, and assists continued negotiations with the creditor groups regarding the competing plans.

The court is mindful that this issue is one that need not be addressed here, but could be left for determination at confirmation, and that Congress did not envision participation by the court in the negotiation process between a debtor and its creditors. *See One Canandaigua Properties, Inc.,* 140 B.R. 616, 618 (Bankr.W.D.N.Y.1992). However, the court is equally mindful that one of the primary goals of Chapter 11 is reorganization of a business as expeditiously as possible. The present case is large and complex and has been pending for over two years and is only now in a posture to have a plan confirmed. The obligation to pay postpetition interest is one of the most significant open issues. At a minimum, resolution of the question whether New Valley is obligated to pay postpetition interest may very well facilitate further negotiations among the debtor, its creditors, and the competing plan proponents, thereby improving the prospects for confirmation of the case before year's end. Accordingly, the issue is ripe for adjudication.

II. *The obligation to pay postpetition interest.*

In large measure the statutory analysis urged by the Debtor is persuasive. Resolution of the issue before the court requires that we focus upon the language of the pertinent sections of the Bankruptcy Code. Construction of a statute must begin with the language of that statute. *Heverly v. Commissioner of Internal Revenue,* 621 F.2d 1227, 1232 (3d Cir.1980), cert. dismissed, 451 U.S. 1012, 101 S.Ct. 2351, 68 L.Ed.2d 865 (1981). As set forth at greater length below, a review of the applicable sections of the Bankruptcy Code leads to the conclusion that much of the pre-Code common law regarding post petition interest has been codified in the Bankruptcy Code, and the solvent debtor rule was not completely codified. The solvency exception is explicitly recognized in Code section 726(a)(5) and incorporated in the "best interest of creditors" tests found in 1129(a)(7)(a)(ii), 1225(a)(4) and 1325(a)(4). In addition, depending on the factual circumstances a debtor could be obligated to pay post petition interests in order to meet the good faith prerequisite to confirmation found in Code section 1129(a)(3). However, a plain reading of the pertinent Bankruptcy Code sections demonstrates that in a Chapter 11 context solvency alone is an insufficient basis to require payment of postpetition interest to unsecured creditors.

Section 502(b) provides in relevant part that if an objection is made to a claim, "[t]he court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount ..." Section 502(b)(2) further provides that a claim is disallowed to the extent that "such claim is for unmatured interest." Thus, by the very terms of the section of the Bankruptcy Code which treats allowance of claims against the estate, post-petition interest is not an authorized element of an allowed claim. Given the clarity of section 502(b)(2) resort to interpretative aids is unnecessary to understand its application. *Connecticut National Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) ("When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.' "). Nonetheless, an examination of the legislative history reveals that Congress intended to codify the general rule that prevailed under the Bankruptcy Act that interest ceased to accrue on a claim as of the bankruptcy petition date:

> Section 502(b) thus contains two principles of present law. First interest stops accruing at the date of the filing of the petition because any claim for unmatured interest is disallowed under this paragraph. Second, bankruptcy operates as the acceleration of the principal amount of all claims against the debtor.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 352 (1977) reprinted in 1978 U.S.Code Cong. & Admin.N. 5787.

At the time of enactment of the Bankruptcy Code, this largely judicially crafted rule had a long and well-established history. *Nicholas v. United States,* 384 U.S. 678, 682, 86 S.Ct. 1674, 1678–79, 16 L.Ed.2d 853 (1966); *Vanston Bondholders Protec. Comm. v. Green,* 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946), *Sexton v. Dreyfus,* 219 U.S. 339, 344, 31 S.Ct. 256, 257, 55 L.Ed. 244 (1911). As described in the case law, this general rule facilitated case administration because it simplified distribution calculations, it permitted the equitable pro rata distribution of the debtor's assets, and the payment delay resulted not from the debtor's actions but by application of the law for the mutual benefit of creditors. *Bruning v. United States,* 376 U.S. 358, 362, 84 S.Ct. 906, 908–09, 11 L.Ed.2d 772 (1964); *Sexton,* 219 U.S. at 344, 31 S.Ct. at 257.

The Bankruptcy Act case law also recognized an exception to this general rule, and authorized the payment of interest where the debtor was solvent. *Vanston,* 329 U.S. at 163, 67 S.Ct. at 240; *United States v. Robinson (In re D.C. Sullivan & Co.),* 929 F.2d 1, 3–4 (1st Cir.1991); *Commercial Paper Holders v. Hine (In re Beverly Hills Bancorp.),* 752 F.2d 1334, 1339 (9th Cir.1984); *In re Macomb Trailer Coach, Inc.,* 200 F.2d 611, 613 (6th Cir.1952); *Littleton v. Kincaid,* 179 F.2d 848, 852 (4th Cir.1950), cert. denied, 340 U.S. 809, 71 S.Ct. 38, 95 L.Ed. 595 (1950). Obviously, if the debtor proves solvent, the concerns which militate against allowance of post-petition interest have less force, and little purpose was discerned in denying a creditor that right. The court in *In re Carpenter,* 363 F.Supp. 218, 222 (D.Tenn.1973), observed that payment of interest is generally allowed when the debtor is solvent, when the collateral in the bankruptcy estate produces income, or the collateral when sold is sufficient to pay such interest, and then stated "[t]hese exceptions to the 'no interest' rule serve as a reminder that the law favors the allowance of interest up to the time of payment except in such circumstances as are presented by the normal bankruptcy condition where the estate is insufficient to meet even the fact amount of the bankrupt's debts."

Thus, the solvent debtor exception to nonpayment of post-petition interest was equally well-established at the time of enactment of the Bankruptcy Code, and Congress can be presumed to have been fully aware of its existence. Interestingly, a related rule of Bankruptcy Act case law, which recognized the appropriateness of payment of post-petition interest to an oversecured creditor was codified in section 506(b). Importantly, while both the rule regarding unmatured interest and the rule regarding payment of interest to oversecured creditors are codified in a Bankruptcy Code chapter of general applicability,

the solvent debtor exception is not so codified. Rather, the issue of a debtor's solvency is treated somewhat differently in the operative chapters of the Bankruptcy Code.

In Chapter 7, post-petition interest is paid as a fifth priority of distribution under section 726(a)(5). Consistent with section 502(b)(2) the post-petition interest is not a component of an allowed claim, but is paid from the petition date on claims allowed under subsections (a)(1) through (a)(4). Thereafter, pursuant to section 726(a)(5) any surplus is paid to the debtor.

A "best interest of creditors" test is codified in sections 1225(a)(4) and 1325(a)(4) so that a Chapter 12 plan or a Chapter 13 plan must provide that each allowed unsecured claim receive at least the amount that would be paid on such claim if the debtor's estate were liquidated under Chapter 7. Thus, if a debtor's estate is sufficient to pay post-petition interest in the event of liquidation, the debtor must similarly pay post-petition interest under a Chapter 12 or Chapter 13 plan.

The "best interest of creditors" test is activated somewhat differently in Chapter 11 than in Chapter 12 or Chapter 13. The test is found in section 1129(a)(7)(A). Pursuant to that subsection, to confirm a Chapter 11 plan each member of an impaired class of claims or interests must either have accepted the plan or retain or receive property that has a value not less than they would receive if the debtor were liquidated under Chapter 7. Thus, post-petition interest must be paid to dissenting members of impaired classes under a Chapter 11 plan if they would receive post-petition interest pursuant to section 726(a)(5) in a Chapter 7 liquidation. The terms of the subsection are straightforward, and the court concurs with the debtor that a plain and sensible reading of section 1129(a)(7)(A)(ii) yields the conclusion that an unimpaired class is not protected by the "best interest of creditors" test.

This conclusion is reinforced if sections 1129(a)(7)(A), 1124(3), and 502(b)(2) are read together. When one does so, it is evident that the "best interest of creditors" test does not apply to require a solvent Chapter 11 debtor to pay post-petition interest to creditors whose allowed claims are unimpaired.

As noted earlier, section 502(b)(2) disallows unmatured interest as a component of an allowed claim. Thus, by definition a creditor's allowed claim can equal no more than the principal amount of the claim together with such interest as accrued as of the date of the bankruptcy petition. Further, pursuant to section 1124(3) if each member of a class of claims receives full payment of its pre-petition allowed claim in cash, on the effective date of the plan, the class is unimpaired. Because the class is unimpaired by virtue of the full satisfaction of so much of its claim as is allowable against the bankruptcy estate by operation of section 502(b)(2), it does not receive the benefit of section 1129(a)(7)(A) which addresses only impaired classes.

The non-applicability of the "best interest of creditors" test to unimpaired classes is further evidenced by the modifications made to sections 1126(f) and 1129(a)(7) by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA). Section 1126(f) was amended to make it clear that not only is an unimpaired class conclusively presumed to have accepted the plan, but also each holder of a claim or interest is similarly conclusively presumed to have accepted the plan. The purpose of the amendment was to overrule the cases which had found the presumption of acceptance rebuttable if a majority of the unimpaired class nonetheless voted to reject the plan. 5 Collier on Bankruptcy ¶ 1126.06[a][2] (15th ed. 1993). Congress also made a corresponding adjustment to section 1129(a)(7)(A). Prior to amendment, the section simply was applicable "with respect to each class of claims or interest." The BAFJA amendment modified the phrase so that it now is applicable "with respect to each *impaired* class of claims or interest." (emphasis supplied). The purpose of the amendment is to clarify that the provisions of the subsection and the "best interest of creditors" test apply only to impaired classes. 5 Collier on Bankruptcy ¶ 1129.01[a] (15th ed. 1993).

Moreover, in light of the comprehensive statutory framework described above, this court can only conclude that the non-applicability of the "best interest of creditors" test

to unimpaired classes of claims or interests was a deliberate policy choice by the framers of the Bankruptcy Code.[1] This conclusion is reinforced by the fact that the other reorganization chapters, Chapters 12 and 13, include a statutory "best interest of creditors" provision which is not limited by whether a claim is impaired.

The fact that the legislative history does not contain a reference to modification of the solvent debtor rule does not compel the conclusion that Congress intended that it survive the enactment of the Code. Where Congress has fully addressed a matter in the statute there is no need to resort to the legislative history or pre-Code case law. Where the statutory language is clear, the " 'sole function ... is to enforce it according to its terms.' " *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)). Nor is the strength of the analysis affected by the fact that its full import depends on construing various sections of the Code together. Firstly, section 502 is in a chapter of general applicability and is intended to be read in conjunction with other sections. Secondly, the pertinent sections of Chapter 11 (i.e., 1124(3), 1126(f) and 11129(a)(7)) are similarly intended to be read together as they each concern the treatment of creditor claims in a reorganization. Finally, the interrelationship of Bankruptcy Code sections was most recently recognized by the Supreme Court in *Rake v. Wade,* —— U.S. ——, ——, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993), when it examined sections 506(b), 1322(b), and 1325(a)(5) to conclude that a mortgagee is entitled to preconfirmation and post confirmation interest on the arrearages paid under a Chapter 13 plan.

Thus, this court concludes that a Chapter 11 debtor that proposes a plan that provides for payment of the allowed claims in full, in cash, on the effective date of its plan is not compelled to pay postpetition interest merely because it is solvent. However, the good faith requirement of Bankruptcy Code section 1129(a)(3) may independently require that postpetition interest be paid.

Because the court finds that Congress codified as much of the solvent debtor rule as it deemed appropriate in the Bankruptcy Code, the case law developed under the Bankruptcy Act, which is predicated solely on the solvency of the debtor is unhelpful. Nor does the decisional authority developed under the Bankruptcy Code provide much guidance. Cases decisions rendered before the BAFJA amendments such as *In re Oahu Cabinets, Ltd.,* 12 B.R. 160 (Bankr.D.Haw.1981) and *In re Kentucky Lumber Co.,* 860 F.2d 674 (6th Cir.1988), were decided before BAFJA made it clear that Bankruptcy Code section 1129(a)(7)(A)(ii) applied only to impaired classes. In other Code decision such as *In re San Joaquin Estates, Inc.,* 64 B.R. 534 (9th Cir. BAP 1986) and *In re Schoeneberg,* 156 B.R. 963 (Bankr.W.D.Tex.1993) it does not appear that the courts had the opportunity to consider the statutory construction argument presented to this court. Instead, it appears that they assumed the continued applicability of the solvent debtor rule as developed under the Bankruptcy Act. Finally, because of the egregious facts, *In re Shaffer Furniture Co.,* 68 B.R. 827 (Bankr.E.D.Pa.1987) is best viewed as correctly decided under the Bankruptcy Code section 1129(a)(3) standards for determination of whether a plan is proposed in good faith.

Good faith is not defined in the Bankruptcy Code. *Hanson v. First Bank of South Dakota, N.A.,* 828 F.2d 1310, 1315 (8th Cir.1987); *In re Madison Hotel Associates,* 749 F.2d 410, 424 (7th Cir.1984). It is generally held that a plan is proposed in good faith if there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purpose of the Bankruptcy Code. *In re Nite Lite Inns,* 17 B.R. 367, 370 (Bankr.S.D.Cal.1982); *Madison Hotel Associates,* 749 F.2d at 425; *In re Elsinore Shore Associates,* 91 B.R. 238, 260 (1988). A further refinement of the test for whether a plan is proposed in good faith is found in the

---

**1.** For a more extended discussion of the Congressional policy choices see Fortgang, C.J. and King, L.P. *The 1978 Bankruptcy Code: Some* *Wrong Policy Decisions,* 56 N.Y.L.Rev. 1148 (1981).

notion that the plan must provide for fundamental fairness in dealing with creditors. *In re Stolrow's Inc.*, 84 B.R. 167, 172 (9th Cir. BAP 1988). In order to reach a determination of good faith in light of the above standards a plan proposal must be "viewed in light of the totality of the circumstances surrounding confection" of the plan. *Matter of Jasik*, 727 F.2d 1379, 1383 (5th Cir.1984); *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1160 (5th Cir.1988); *Matter of Sound Radio Inc.*, 93 B.R. 849 (Bankr.D.N.J.1988).

Thus, in section 1129(a)(3) we find a section of the Bankruptcy Code in which Congress appears to have deliberately left the most important term undefined. This permits considerable judicial discretion to be exercised and equitable considerations such as fundamental fairness to creditors to come into play.

The *Shaffer Furniture* case is illustrative of a case when considerations of good faith in proposal of a plan require the payment of postpetition interest. In *Shaffer Furniture*, prior to filing bankruptcy, the debtor retained a liquidator who advertised and conducted a "bankruptcy sale" both before and after the petition was filed. After filing no effort to obtain court approval of the sale was made. Nor were creditors notified. Further, without a plan the debtor solicited its creditors to accept a 50% payment plan and actually disbursed payments to creditors pursuant to this proposal. At the conclusion of the bankruptcy sale, without court approval, the debtor retained an auctioneer to sell the remaining assets. The debtor thereafter filed a liquidating plan under which it proposed to pay its creditors in full, but did not proposed to pay interest on creditor claims. The disclosure statement revealed that the debtor had cash of $214,420.92 and liabilities of $71,806.99. At a hearing on whether postpetition interest should be allowed, the court found for the creditors relying substantially on Bankruptcy Act and Bankruptcy Code case law which applied the solvent debtor rule.

While this court disagrees with the rationale for the decision in *Shaffer Furniture*, it wholeheartedly concurs in the result. The same result can be reached by application of the equitable principles which inform the good faith requirement of Bankruptcy Code section 1129(a)(3). Viewing the totality of the circumstances surrounding the confection of the plan, it would have been fundamentally unfair to creditors to have permitted the debtor to liquidate its assets at its leisure, without supervision or even notice to some of its creditors, to permit it to pay creditors when it chose and in lesser amounts than that to which they were entitled. Moreover, it is manifest that a plan which is the culmination of such a course of conduct is hardly a result consistent with the objectives and purposes of the Bankruptcy Code.

■ Whether the requirements of Bankruptcy Code section 1129(a)(3) dictate that New Valley must pay postpetition interest on allowed unsecured claims is a factual determination which is most appropriately addressed at the confirmation hearing. It is at that time that the court can best consider the totality of the circumstances that surround the creation of the plan. However, as discussed earlier, solvency alone is not a sufficient basis to require New Valley to pay postpetition interest.

## CONCLUSION

Congress incorporated into the Bankruptcy Code as much of the Bankruptcy Act solvent debtor rule as it deemed necessary. Consideration of the interplay and application of Bankruptcy Code sections 506(b)(2), 1124(3), 1126(f), 1129(a)(3) and (a)(7)(A)(ii) yields the conclusion that a solvent debtor is not required to pay postpetition interest on claims of unsecured creditors who are unimpaired under the plan, unless the good faith considerations of section 1129(a)(3) command such a result.