**In re THE SEASONS APARTMENTS, LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 96BK–31400.**

United States Bankruptcy Court, W.D. Louisiana, Monroe Division.

Nov. 21, 1997.

John M. Frazier, Shreveport, LA, for Debtor.

William T. D'Zurilla, New Orleans, LA, for Beal Bank.

Jeffrey R. Fine, Dallas, TX, for Sunset Downs Corp.

### REASONS FOR DECISION

HENLEY A. HUNTER, Chief Judge.

This matter came before the Court on the Approval of the Third Amended Disclosure Statement, the Debtor's Motion to Extend the Automatic Stay beyond November 15, 1997, this Court's Motion to Dismiss, and the Expedited Hearing on Beal Bank's Motion to Dismiss. This is a Core Proceeding pursuant to 28 U.S.C. § 157(b)(2)(B, G, & L). This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and by virtue of the reference by the District Court pursuant to Local Civil Rule 83.4 incorporated into W.D.La. LBR 9029–3. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. Pursuant to these reasons, the Objection of Beal Bank, S.S.B., to the Debtor's Third Amended Disclosure Statement is sustained, the Motion to Extend is denied, and the Case is dismissed, effective November 28, 1997, unless otherwise ordered by the Court.

### FACTUAL BACKGROUND

In 1985, the Debtor formed to build and operate an apartment complex in Monroe,

Louisiana. For its capitalization, the Debtor borrowed approximately three million dollars. The original lender and mortgagee is "The Ouachita National Bank in Monroe, Monroe, Louisiana, Trustee under Indenture of Trust dated as of July 1, 1985 between Trustee and Louisiana Public Facilities Authority." On August 14, 1985, the Federal Housing Commission, an agency of the Department of Housing and Urban Development (HUD), insured this mortgage.

Ouachita later became Premier Bank. In 1990, the latter made claim against the insurance, and assigned "all rights, title, and interest in" the note and mortgage to HUD, because of Debtor's default. In October, 1995, defendant, Beal Bank, S.S.B., purchased the note and mortgage from HUD. On July 18, 1996, Beal Bank demanded that the Debtor pay all amounts due under the note. Failing that, Beal stated its intent to file foreclosure proceedings. On August 9, 1996, the Debtor filed for relief under Chapter 11 of the Bankruptcy Code. As of August 9, 1996, the total amount due under the note and mortgage was $3,179,444.59 in principal, $211,482.50 in accrued interest, and $32,556.40 in late charges. Beal Bank is the sole secured creditor of the debtor.

On May 20, 1997, this Court filed reasons for decision holding that the rents of the Seasons complex could not be used to fund a reorganization of the Debtor, as these rents were assigned to Beal Bank as security for its debt. *Reasons for Decision, May 20, 1997, The Seasons Apartment, A Limited Partnership v. Beal Bank, SSB, Adversary Proceeding 97–3010.* Seasons sought a new trial on that issue, which was set for a hearing on June 4, 1997. Beal insisted that it had an absolute assignment as to the rentals.

Seasons filed a Motion for Valuation of Security and for Determination of "cash out price." The hearings on the motion for new trial and valuation were held on the 4th and 5th days of June. For reasons orally assigned, the Court determined the Debtor's appraisal was correct. The order, signed July 1, 1997, states that the total value of Beal Bank's collateral package is $2,250,000. This figure is the "cash out price." The Debtor was given 120 days to confirm a plan, pay the cash out price to Beal Bank, or the automatic stay would lift. The July 1st order also continued the previous interim cash collateral order in effect for the same 120 day period.[1]

Because the Court declined to accept Beal's argument on the rentals, Beal Bank filed a notice of appeal of the May 20, 1997 Reasons and the order therefrom, and this Court's order continuing the interim cash collateral order in effect. On that day, Beal also filed a motion to amend the judgment on valuation, or for a new trial. That matter was submitted on the briefs on August 19, 1997. An Order and accompanying Reasons for Decision were issued on August 22, 1997, denying Beal Bank's motion. On August 28, 1997, Beal appealed this Court's valuation determination.

All matters on appeal have been stayed by the District Court at Beal's request pending a determination of the issues presently before this Court.

On September 22, 1997, a hearing was held on the Second Amended Disclosure Statement. On October 8, 1997, this Court signed an order sustaining Beal Bank's objection to the disclosure statement on the basis that the plan disclosed was unconfirmable on its face. As Beal Bank was impaired under that version of the plan, would not vote in favor of the plan, and was the only non-insider creditor, the requirements of § 1129(a)(10) could not be met. This Court rejected the Debtor's invitation to deem its Class 1 Creditors, namely its attorney and its appraiser, as a voting class.

On October 15, 1997, the Debtor filed a Motion to permit the filing of a Third Modified Disclosure Statement, the confirmation of the Third Modified Plan, and extension of the date for termination of the automatic stay, along with a Third Amended Disclosure Statement and Plan. The Third Amended Plan proposed to pay Beal Bank the full

---

1. That deadline was later extended to November 15, 1997 by order dated August 21, 1997. Finally, on Motion of Beal Bank, the stay was extended to November 28, 1997, to permit settlement negotiations between the parties. The Court has been advised that negotiations have failed.

amount of its *allowed* secured and undersecured claims under 11 U.S.C. §§ 502, 906. The Debtor maintains that this cash payment, to be made thirty days after confirmation, means that Beal's claim is unimpaired and thus is deemed to have accepted the plan. 11 U.S.C. § 1126(f). Beal argues that the deprivation of post-petition interest, fees, and costs amounts to an impairment under § 1124 of the Code.

## DISCUSSION

### *The [Im]Possibility of Cram Down*

■ At the hearing on the Third Amended Disclosure Statement, the Debtor reurged its argument that administrative claims can constitute an accepting class for purposes of 11 U.S.C. § 1129(a)(10). This Court again rejects the Debtor's argument. Administrative claims are priority claims under § 507(a)(1). Priority claims must be paid in full, and therefore cannot be impaired, much less vote in favor of a plan. 11 U.S.C. § 1129(a)(9)(A), *In re Greystone III Joint Venture*, 995 F.2d 1274,. 1281 (5th Cir.1991), *In re Distrigas Corp.*, 66 B.R. 382, 387 (Bkrtcy.D.Mass.1986).

■ The .present Disclosure Statement states that Classes One through Six of the plan are unimpaired, including Class 4, Beal Bank's undersecured claim. Under § 1129(a)(10), if the plan impairs a class of claims, at least one class of claims that is impaired must accept the plan, "without including any acceptance of the plan by .any insider," in order for the plan to be confirmable under § 1129(b)(2), i.e., by "cramdown." As Beal has been determined to be the only non-insider creditor, Beal's acceptance of the plan is crucial.[2] The Debtor has attempted to "unimpair" Beal, thus obviating the requirement for Beal's acceptance. If Beal is impaired, the Disclosure Statement, as amended, may not be approved.

**2.** There are seven classes under the plan. Class 1 consists of Administrative and Priority Claimants. Class 2 is comprised of any Tax Claimants. Class 3 is Beal's secured claim of $2,250,000.00, which Debtor proposes to pay at closing. Class 4 is the Undersecured Claim of Beal, which Debtor estimates at approximately $700,000.00 to be paid in full, in cash, at closing from the "Take Out" financing, unless Beal elects treatment under § 1111(b)(2). Class 5 is the underse-

### *Insolvent Debtors and Post Petition Interest*

The parties have made much of Congress's repeal· of 11 U.S.C. § 1123(3). Prior to the 1994 Bankruptcy Reform Act, that section provided that claims were unimpaired if "... on the effective date of the plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to ... with respect to a claim, the allowed amount of such claim ..." This provision essentially allowed a Chapter 11 Debtor to "cash out" a claim for the amount owed at the time of the filing of the bankruptcy petition. 11 U.S.C. § 502. The § 1123(3) amount does not include post-petition interest, even if the Debtor is solvent. § 502(b), *In re New Valley Corp.*, 168 B.R. 73, 79 (Bkrtcy.D.N.J.1994). Because of the result reached in *New Valley*, Congress repealed subsection 3. *See* 104 Con.gRec. H10,768 (October 4, 1994).

While the Congressional Record reveals that Congress was most concerned about solvent debtors avoiding post-petition interest on unsecured claims, Congress repealed the entire subsection. The Debtor therefore argues that Congress only intended to deprive solvent debtors the ability to cash out unsecured claims without paying post-petition interest. The Debtor states that "[I]t was likely never the intent of Congress to place such a burden of post-petition interest on an insolvent debtor in order to have a class of claims be unimpaired ... the intent of the amendment was to overrule the basic inequity of the *New Valley* decision ..."[3] The Debtor then quotes law review articles which succinctly summarizes its argument as follows:

"Under both the Bankruptcy Act of 1898 and the Bankruptcy Code, courts generally awarded postpetition interest to unsecured

cured claim of Grand Court, an affiliate of Debtor, to be paid $20,000.00 in cash at closing. Class 6, contains allowed claims of unsecured creditors. This Class has reportedly been the subject of purchasing of claims by Sunquest Properties, the manager of the complex. Class 7 is the Allowed Interests of the Partners.

**3.** Debtor's Memorandum in Support, p. 6–7.

creditors when the Debtor was solvent, and the amendment to Section 1124(3) contained in Section 213(d) of the Act is intended to codify that result ... Arguably, the deletion of Bankruptcy Code Section 1124(3) requires that creditors of a solvent estate be paid in full, with interest, before equity holders may receive distributions in connection with their interests ... Accordingly, solvent debtors may attempt to assert that creditors with no legal, contractual, or equitable claim to interest are left unimpaired under Section 1124(1) when they are paid the full amount of their claim, without interest ..." [4]

The Debtor's Memorandum continues:

"In contrast, the change in the definition of impairment will have a great effect on the Code requirements of one accepting impaired class ... The effect of the 1994 Amendments is to further undercut the supposed purpose of the one accepting impaired class requirement, that creditors who are harmed must vote in favor of the reorganization plan. In the case of insolvent debtor, a class of claims that will not receive postpetition interest in a Chapter 7 liquidation and that will be paid in cash on the confirmation date the full amount of their allowed claims will be deemed impaired and could be the one accepting impaired class of claims for purposes of plan confirmation ..."

"Thus, to solve the rare problem of postpetition interest on unsecured claims in the case of a solvent debtor, Congress has unwittingly changed the dynamics of confirmation for the vast majority of cases. This unthinking implicit repeal of the one accepting impaired class requirement through the change to the definition of impairment is one of the most flagrant examples of what happens when Congress changes a complex statute without considering how that change will reverberate throughout the Code." [5]

### Analysis

At first glance, Debtor's argument is logically appealing, especially in light of the history of the present case. Beal's efforts in this case to derail the Debtor's reorganization have obscured the issues. Beal first argued unsuccessfully that the rental stream from the apartments was assigned to it in absolute ownership. This Court rejected this notion, but, by the same token rejected Debtor's efforts to use Beal's interest in the collateral to fund its reorganization. Then, Beal did not prevail at the valuation hearing. It sought a new trial for reasons that would be best described as specious. Despite this Court's denial of rehearing on the valuation, Counsel for Beal has attempted to reargue the valuation issue at every subsequent hearing.

Moreover, Beal has been less than forthright in its calculations of amounts needed to satisfy its claims. In its opposition to Debtor's Third Amended Disclosure Statement, Beal attached exhibits to prove the amount it is owed. The Exhibit requests $3,462,634.07, and a 5% "equity kicker" that was part of a provisional workout agreement ("PWA") between HUD and the Debtor. Both parties generally concede that the PWA had expired quite some time before the filing of this bankruptcy. Additionally, there has been no evidence that Beal has ever been bound by the PWA. Only when challenged at the hearing on the Third Disclosure Statement did Beal withdraw its request for the equity kicker with the disingenuous explanation that it never asked for it anyway. Finally, Beal's figures include a request for payment of the expenses of Don Barber, a representative of Beal Bank who has been in constant attendance at most of the hearings in this case. This unusual request would appear to fall

---

4. Jacob, Corrie, and O'Boyle, "An Analysis of the Provisions of the Bankruptcy Reform Act of 1994 Relating to Cases Administered Under Chapter 11, Payment of Post–Petition Interest on Unsecured Claims: Section 213(d) of the Bankruptcy Reform Act of 1994, Ramifications of the Amendment." *Journal of Bankruptcy Law and Practice,* Vol. 4, No. 4, May/June, 1995, p. 368–9.

5. Rusch, "Unintended Consequences of Unthinking Tinkering: The 1994 Amendments and the Chapter 11 Process", 69 Am.Bankr.L.J. 349, 377 (Summer, 1995).

outside the ambit of Beal's security interest even if it were an oversecured creditor under § 506(b). On November 18, 1997, after this matter was taken under advisement by the Court, and following Beal's own motion to extend the stay so that settlement negotiations might proceed, Beal filed a "Motion and Order for Leave to Amend Pleading and to File Stipulation." This document offers two alternative scenarios to which "Beal stipulates that it will consent to a reorganization plan in this case...." This Court, understandably confused, denied this request.

*Impairment Under the Code*

■ The posturing of the parties should not, however, deter us from the task at hand. Although logic or common sense might dictate that payment of an allowed claim should permit confirmation of a plan without further inquiry, the Code must be applied as written. "As long as the statutory scheme is coherent and consistent, there is generally no need for a court to inquire beyond the plain language of the statute." *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989).

The term "claim" is not defined in 11 U.S.C. § 502, but in § 101(5), which definition follows:

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured ..."

■ Under 11 U.S.C. § 502, claims filed under § 501 are deemed allowed, unless an objection is filed. Only if an objection is filed is the Court to examine the basis for the proof of claim. Thereafter, the court "shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that ... such claim is for unmatured interest."

The Debtor argues that Congress's failure to change 11 U.S.C. § 502 means that a "claim" does not include post-petition interest unless the Code otherwise provides for same. In support of this proposition, Debtor urges the general understanding that *unsecured* and *undersecured* claimants are not entitled to interest, this based on a litany of cases both before and after the passage of the Bankruptcy Code. *See e.g. United Savings Association v. Timbers of Inwood Forest*, 484 U.S. 365, 372, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988). Conversely, 11 U.S.C. § 506 allows interest and other charges to *oversecured* creditors.

■ In Chapter 11, claims are presumed to be impaired (and thus generally entitled to vote on the plan) unless one of the conditions in 11 U.S.C. § 1124 are met. That section provides:

"Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan

(1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or

(2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

(A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

(B) reinstates the maturity of such claim or interest as such maturity existed before such default;

(C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

(D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest."

 As the Debtor's proposed plan does not propose to cure the arrearage on Beal's debt, subsection (2) is inapplicable. Therefore, the plan's treatment of Beal's claim must fall under subsection (1) for Beal's claim to be unimpaired.

Under § 1124(1), the "claim", not the "allowed claim", must be left unaltered for such claim to be unimpaired. Only former § 1124(3) did speak in terms of the "allowed claim".[6] As the U.S. Supreme Court has said,

" 'It is generally presumed that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another,' and the presumption is even stronger when the omission entails the replacement of standard legal terminology with a neologism." *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994). (citations omitted.)

The combination of "allowed" and "claim" must mean something more than the word "claim" by itself. To interpret subsection (1) to the effect that the word "claim" is the same as an "allowed claim" renders subsection (3) superfluous. "The statute admits a reasonable construction which gives effect to all of its provisions. In these circumstances, we will not adopt a strained reading which renders one part a mere redundancy." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307–08, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961). Because of the existence and later repeal of subsection (3), subsection (1) cannot be read to encompass the same method of unimpairing a creditor's claim.

This Court is not unmindful that the case of *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), may have cast a pall of confusion over the meaning of the term "allowed secured claim." However, the absence of the word "allowed" before the word "claim" makes the broad definition of § 105(5) applicable to an analysis of the present version of § 1124.

The Debtor argues that interest on claims ceases running upon filing of a bankruptcy, relying on 11 U.S.C. § 502(b) and § 506(a). *In re American Solar King Corp.*, 90 B.R. 808, 820 (Bkrtcy.W.D.Tex.1988), seemingly supports this contention. On this point, this Court must disagree. Interest on claims continues to accrue, but is generally not paid in bankruptcy pursuant to § 502's definition of an "allowed Claim." The fact that interest may be paid to *oversecured* creditors, under § 506(a), illustrates that post-petition interest continues to accrue, but is only recoverable under certain circumstances.

### The Jurisprudence Supports This Court's Conclusions

The result reached in this case is in agreement with *In re Atlanta–Stewart Partners*, 193 B.R. 79 (Bkrtcy.N.D.Ga.1996). There, the Court observed that treating a class of creditors being paid in full as impaired is contrary to traditional holdings. Nevertheless, the Court found that result to comport with the Bankruptcy Code, as amended in 1994. It suggests that litigation over the concept of artificial impairment would be avoided under the post–1994 version of § 1124. It has been held that improvement in a creditors pre-petition position may constitute impairment. *In re L & J Anaheim Associates*, 995 F.2d 940 (9th Cir.1993).

Further, the case of *In re Ambanc La Mesa Limited Partnership*, 115 F.3d 650 (9th Cir.1996), shows the trend of the jurisprudence toward the recognition of the losses sustained by creditors when post-petition interest is not paid in a Chapter 11 plan. In *Ambanc*, the Court was confronted with a Chapter 11 plan that proposed to pay a creditor the present value of a creditors unsecured claim, without post-confirmation inter-

---

**6.** "The maxim *noscitur a sociis*, that a word is known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 1582, 6 L.Ed.2d 859 (1961). In this case, the word "allowed" significantly alters the meaning of the word "claim".

est. The court found that this treatment violated the absolute priority rule. *See* 11 U.S.C. § 1129(b)(2)(B). The court stated that in order for a creditor "to be paid the full value of its claims, the Plan must provide for payment of interest for the post-confirmation time-value of the amount of [the] unsecured claim." *Id.* at 654.

In the final analysis, this Court has no choice but to rule in favor of Beal Bank, and find that its claim is impaired under § 1124. While Debtor's argument has appeal, this Court finds no support in the Code for its position. Congress well knew how to distinguish between insolvent and solvent debtors in its amendment process. It did not do so.

On these facts, considering the impasse in the settlement negotiations demonstrated by Beal's latest filing, this case is ripe for dismissal under 11 U.S.C. § 1112(b).

### CONCLUSION

For the foregoing reasons,

**IT IS ADJUDGED** that the objection of Beal Bank, S.S.B., to the Debtor's Third Amended Disclosure Statement is **SUSTAINED,** the Motion for Extension is **DENIED** and the case is **DISMISSED** effective November 28, 1997, unless otherwise ordered by the Court.

A separate conforming order will enter.