**In re TAVERN MOTOR INN, INC.,
d/b/a The Montpelier Tavern
Inn, Debtor.**

**Bankruptcy No. 83–89.**

United States Bankruptcy Court,
D. Vermont.

Dec. 20, 1985.

William Gray, Burlington, Vt., for Irving Anders of Montpelier, Vt. (Anders).

Jacqueline Hughes, Montpelier, Vt., for State of Vt., Dept. of Taxes (DOT).

John Kilmurry, Montpelier, Vt., for Barbara Kilmurry.

Spencer Knapp, Burlington, Vt., for Chittenden Trust Co. (CTC).

Brian Lyford, Northfield, Vt., for Northfield Sav. Bank of Northfield, Vt. (NSB).

Jerome I. Meyer, White River Junction, Vt., for Unsecured Creditor's Committee.

Patti Page, Burlington, Vt., for the U.S.I. R.S.

John P. Riley, Montpelier, Vt., for the City of Montpelier, Vt. (Montpelier).

Raffaele Terino, White River Junction, Vt., for Avery Inns of Vermont, Inc. (Avery).

F. Voight, pro se, for Culinary Institute of America (CIA).

## MEMORANDUM AND ORDER

FRANCIS G. CONRAD, Bankruptcy Judge.

This matter is before the Court for an Order to approve debtor's Fifth Amended Plan of Reorganization (2nd revision). After an initial hearing on the amended plan, the objections, and a motion to convert by a secured creditor, debtor asked the Court to invoke 11 U.S.C. Section 1129(b), the "cram-down" provision of the Code. A hearing was held on the objections to applying 11 U.S.C. Section 1129(b). Because the debtor's Fifth Amended Plan of Reorganization (2nd revision) is not supported by adequate financial data as required by 11 U.S.C. Section 1125(a)(1), the Plan is DENIED confirmation. The motion for conversion is also DENIED with leave to renew within thirty (30) days.

Debtor, a domestic Vermont sub-chapter "S" corporation, operates a locally well-known hotel, and related commercial, retail, and office facilities, in the capitol city of Montpelier. Originally built in the 1930's, the Tavern, as it is known locally,

Bruce Bjornlund, Waterbury, Vt., for John M. Kilmurry.

Andrew Field, Burlington, Vt., for debtor.

has been through several facility additions and changes in ownership before filing its petition to reorganize on May 11, 1983. The case has had a long and acrimonious history characterized by continued bickering that has detracted from the issues and from the debtor's rehabilitative needs.

Debtor's first Plan of Reorganization was filed on October 26, 1983. It was amended five times, and the most recent amended plan has been revised twice. The plan needs to be amended again because of stipulations made at the various hearings. The Disclosure Statement, after being amended three (3) times and revised once, was approved by the Court on July 8, 1985. The confirmation hearing and objections to the most recent revised Plan were noticed to be heard on September 9, 1985. Four creditors filed objections and one creditor, CTC, filed motions to convert under 11 U.S.C. Section 1112(b), (1), (2), and (3) and for relief from the automatic stay imposed by 11 U.S.C. Section 362. CTC agreed to withdraw the motion for relief from stay pending the outcome of the confirmation hearing and our ruling on its motion to convert debtor to Chapter 7.

After the presentation of evidence at the hearing on September 9, 1985, two creditors withdrew their objections to the Plan. The Unsecured Creditor's Committee expressed their approval, explaining to the Court that under the Plan there is at least a hope of recovery. The Committee's counsel said, "This promise of a recovery is more than any amount they [the unsecured creditors] could hope to receive if the debtor were liquidated under Chapter 7 of the Bankruptcy Code." We concur with this statement. The evidence and the record in this case reveal little or no hope for recovery on the part of the unsecured creditors unless the debtor continues to operate.

At the close of the confirmation hearing debtor moved the Court to approve an application to invoke the "cram-down" provisions of 11 U.S.C. Section 1129(b). We held a hearing on this motion on October 17, 1985. The parties presented little new evidence at this hearing. Debtor, however, successfully negotiated away another creditor who had objected to the Plan. The sole remaining objecting creditor, CTC, held steadfast to its objections.

CTC's objections, succinctly summarized, are:

1) The Disclosure Statement is insufficient.

2) Chittenden Trust Company is impaired by the Plan.

3) The Plan lacks adequate means for implementation.

4) There is a likelihood of liquidation or further financial reorganization.

5) The charter provisions as required by 11 U.S.C. 1123(a)(6) are absent.

6) The Plan is discriminatory, unfair, and inequitable to the impaired creditors.

Several of CTC's objections do not strike at the heart of the problems in debtor's Plan and need not be resolved at this time. Neither debtor nor CTC adequately addressed these issues during the evidentiary hearings and we shall not now decide the issues raised by CTC's objections # 3, # 4, # 5, and # 6.

## Impairment

Numerous classes are impaired under this Plan. With the exception of CTC, all classes have balloted for the Plan. Debtor states that "the note, mortgage, and security interests of the Chittenden Trust Company, dated December 15, 1980, shall remain undisturbed." (Plan, page 8). While the word "undisturbed" is not synonymous with unimpaired, construing the word in the context of the Plan, we find that the debtor intends to treat CTC as an unimpaired secured claim. The Plan also proposes to amortize all late charges and outstanding principal, with interest, over the remaining life of the note. Finally, the Plan proposes to pay the interest accrued and unpaid as of the date of distribution in equal monthly payments over 24 months, without interest. CTC argues that the Plan alters its rights under the loan agreement dated December 15, 1980. We disagree.

Section 1124 of 11 U.S.C., which defines impairment for purposes of Section 1123, provides in part:

Except as provided in Section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—

1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default—

A) cures any such default that occurred before or after the commencement of the case under this title, other than a default of a kind specified in section 365(b)(2) of this title;

B) reinstates the maturity of such claim or interest as such maturity existed before such default;

C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and

D) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest;

This section defines the concept of impairment of claims or interests. Although there are Courts that disagree, *In re Barrington Oakes General Partnership*, 15 B.R. 952, 8 B.C.D. 569, 5 C.B.C.2d 969 (Bkrtcy.D.Utah 1981), the legislative history of this section indicates it is new. [House Report No. 95–595, 95th Cong., 1st Sess. 408 (1977], U.S.Code Cong. & Admin. News 1978, 5787, 6364.

CTC argues what can be best described as a blanket impairment objection. In reality, CTC's objection raises two issues. The first pertains to CTC's pre-petition claim, the second to CTC's post-petition accrued interest. To which of these separate objections does 11 U.S.C. Section 1124 apply?

█ We are of the opinion that 11 U.S.C. Section 1124 applies only to pre-petition claims or interests and not to post-petition claims. Before reaching this conclusion, a brief review of the history of Section 1124 and its relation to other sections of Title 11 is appropriate. For a more detailed analysis of the history of Section 1124, see *In re Barrington Oakes General Partnership*, *supra*.

█ Section 1124 defines impairment for purposes of 11 U.S.C. Section 1123(a)(2). Thus impairment refers to that part of a debtor's Plan which addresses the treatment of claims and interests [See generally, *House Report*, No. 95–595, 95th Cong. 1st Sess. 406 (1977); *Senate Report*, No. 95–989, 95th Cong. 2d Sess. 118 (1978) ]. A claim, as defined in 11 U.S.C. Section 101(4), contemplates the broadest possible inclusion of all the debtor's legal obligations within the bankruptcy case so that the Bankruptcy Court may grant, if appropriate, the broadest possible relief. *House Report*, No. 95–595, 95th Cong. 1st Sess. 309 (1977); *Senate Report*, No. 95–989, 95th Cong. 2d Sess. 21 (1978). A claim is not defined as post- or pre-petition. The use of the word "unmatured" to describe a claim might argue or imply that the framers of the Code intended to include post-petition claims, and in particular, as here, post-petition interest. A reading of 11 U.S.C. Section 502(b)(2), however, dispells the notion that unmatured interest is an allowable claim. Section 502(b)(2) stands for the principle that interest stops accruing on the date the petition is filed. *House Report*, No. 95–595, 95th Cong. 1st Sess. 352–354 (1977), see also *Senate Report*, No. 95–989, 95th Cong. 2d Sess. 62–5 (1978). Finally, the legislative history of 11 U.S.C. Section 1124 indicates, throughout, an intention to return the creditor to its *original position* and the *original terms* of an obligation.

█ We are somewhat troubled by the clause in 11 U.S.C. Section 1124(2)(A),

which requires the "[cure of] any such default that occurred before or *after* the commencement of the case under this Title . . ." This language seems at first blush to include post-petition claims. We need not decide this issue now on the facts of this case. Debtor was in default on its obligation to CTC when it filed its petition. Subsequent stipulations between the parties eliminated the pre-petition accrued interest default, thus taking any default outside the provisions of 11 U.S.C. Section 1124. Thus, no matter how poorly drafted the Plan's paragraphs pertaining to CTC's claims are, it is clear, based on the record in the case and the proposed Plan, CTC's pre-petition claim is not impaired and comes within the mutually exclusive exceptions of 11 U.S.C. Section 1124.

### Accrued and Unpaid Post-Petition Interest

The only meritorious issue raised by CTC is the objection to the proposed treatment in the Plan of the post-petition interest that has accrued and remains unpaid. At hearing, neither party produced evidence on the amount accrued and unpaid. Debtor, however, represented in writing to the Court, with a copy to CTC, that the amount of interest was about 2 months in arrears. The amount has not been disputed by CTC.

During the course of this much protracted case, the principal protagonists, debtor and CTC, and other creditors entered into several stipulations. One stipulation in particular, filed November 30, 1983, provides in pertinent parts for the payment of pre-petition and post-petition interest, for payment of some principal, and for changing the contractual interest rates at various times.

We approve of negotiated stipulations between a debtor and its creditors. Usually consensual arrangements result in a speedy and economical resolution of disputes and increase everyone's expectations

for a debtor's rehabilitation. These arrangements may alter the legal and economic relationships of the parties permanently or temporarily. If the arrangement is permanent, this Court will not countenance the unilateral withdrawal of a debtor, without just cause, from the terms of a voluntary arrangement approved by the Court.

On the other hand, many arrangements are temporary. They are made to resolve disputes pending the results of a debtor's reorganization or, as in the case of some Chapter 11 debtors, conversion to a Chapter 7 debtor.

The stipulation of November 30, 1983 covers continuing operating procedures of the debtor, but nowhere indicates it will be incorporated into a Plan of Reorganization. In fact, from a reading of the recitals * contained within the stipulation, it is clear that the stipulation was meant to remain in effect until the debtor had a Plan in place.

■ How then is the unpaid accrued interest to be treated? May it be treated as an administrative expense under 11 U.S.C. Section 503? We think not. Although the interest accrued after the commencement of the case, it satisfies none of the other criteria of Section 503. Evidence from earlier proceedings in this case indicates that the collateral exceeds CTC's secured interest. To the extent the collateral exceeds CTC's allowed claim, the unpaid accrued interest may be entitled to a priority under 11 U.S.C. 506(b). See *Norton Bankruptcy Law and Practice*, Section 12.22, Part 12, Page 37.

The Code does not adequately address the issue of unpaid accrued interest. Debtor has chosen to address it by providing for the payment of unpaid accrued interest over two years. Debtor does not treat the arrearage as a priority in its Plan. In light of the fact that CTC has been paid its

---

\* In the "Stipulation Regarding Continuing Operating Procedures" at Page 3, Paragraph G of recitals, the parties state: ". . . and the Tavern (debtor) desires to enter into this agreement with the Chittenden (CTC), and with other creditors, to provide acceptable conditions for the continued operation of the Tavern while it is seeking to obtain approval for, and to implement, the Plan."

pre-petition interest, the small size of the arrearage involved, and the short amortization period, we find debtor's treatment of the post-petition claim to be fair and equitable.

### Discrimination, Unfairness, and Inequitable Treatment

■ CTC argues that the plan, if approved, would impair the holders of certain secured claims. We agree with CTC's contention that the Plan impairs the holders of secured claims. 11 U.S.C. Section 1129(b) is not pertinent here, for this section specifically requires of the Court preliminary findings, prior to its invocation, that one or more classes are impaired and have not accepted the Plan. We cannot make such findings here because the classes that are impaired have accepted. The sole objector, CTC, is not impaired. Therefore, we do not decide at this time if the Plan discriminates or is unfair and inequitable to a class of claims or interests because Section 1129(b) has not been properly invoked by the debtor.

CTC argues further that payment of administrative claims and claims of unsecured creditors before its claim is completely liquidated is inequitable and prohibited. CTC's objection needs to be addressed because it raises the spectre of the absolute priority doctrine, a doctrine modified by the present Code. Specifically, 11 U.S.C. Section 1123(a), as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, provides that a plan, notwithstanding any otherwise applicable nonbankruptcy law, designate expenses pursuant to 11 U.S.C. Section 507(a)(1). Section 1123(a) specifies the types of claims that are entitled to priority in distribution. CTC's claim enjoys no priority over administrative expenses described in debtor's Plan, nor need CTC receive full payment before any payments to unsecured creditors.

■ The absolute priority rule, as understood by this Court, provides that no class may participate in a distribution under a Plan unless classes having priority are compensated in full. The rule essentially follows the orderly liquidation preferences contracted for by parties to a credit arrangement. See generally *Blum & Kaplan*, The Absolute Priority Doctrine in Corporate Reorganizations, 41 U.Chi.L.Rev. 651 (1974). Section 1123 changes the Absolute Priority Doctrine by allowing a debtor to impair both secured and unsecured claims, subject to the protection of 11 U.S.C. Section 1129(b).

■ CTC appears to want more than its original bargain. Common business practice tells us that, in the normal course of any business operation, long-term obligations will be amortized over a long period of time and short-term obligations over a short period of time. Unsecured creditors are generally short-term creditors. It appears to us, on the facts in this case, that debtor's treatment of the unsecured class of creditors is not discriminatory, inequitable, or unfair to CTC, but rather reflects common business practice. Accordingly, we reject CTC's objection that the Plan is discriminatory, inequitable, and unfair to the impaired creditors.

### The Court's Independent Review

■ We held in *In re Trail's End Lodge, Inc.*, 54 B.R. 898 (1985), that the Court has a mandatory duty to determine whether a Plan meets all the requirements for confirmation under 11 U.S.C. Section 1129. We are prevented from performing such an independent review with this Plan because the debtor has not provided the Court, and consequently the creditors, with enough information or data to determine if the Plan is feasible within the meaning of 11 U.S.C. Section 1129(a)(11). Although we acknowledge it is not their burden, CTC, the sole objecting creditor, has not provided the rebutting evidence to show the Plan is not feasible. In order to provide guidance to this debtor and future Chapter 11 debtors who file plans in this Court, we list below the minimum information we need to determine the financial feasibility of a non-liquidating Reorganization Plan of a small to medium size company not listed on a stock exchange. This information satisfies the

requirements of 11 U.S.C. Section 1125(a)(1) as it pertains to financial data. Besides statutory fulfillment, the gathering and review of the financial information will force debtor to face squarely the prospects of its rehabilitation instead of the commonly seen financial ostrich approach. Accordingly, a Plan must at least include:

1) Compiled or reviewed financial statements with full footnote disclosure prepared and dated within 60 days of the filing of the Disclosure Statement.

2) Quarterly cash receipts and disbursements and forecasts which, at a minimum, cover the first 12–18 months of any Plan.

3) Projected or forecasted financial statements covering the shorter of 3 years or the Plan expiration date if less than 3 years, compiled or reviewed

4) Presentation of salary, wages, pension and bonus plans, etc., of top management, insiders, and directors for the first three years of the Plan, or a shorter period if the Plan term is shorter.

5) Presentation and calculation satisfying the requirements of 11 U.S.C. Section 1129(b)(2) if a secured creditor is impaired and 11 U.S.C. Section 1129(b) may potentially be invoked.

6) Present value computation and schedules, if applicable, attached to the plan.

7) The contractual terms, if equity or debt securities are to be issued.

8) Attached federal corporate tax returns for the immediately preceding tax period.

The realities of reorganization under Chapter 11, for the unorganized and unsophisticated creditor, and the removal of Bankruptcy Judges from the day to day administrative supervision of cases inhibit the availability of objective data about the debtor, its operations, policies, competitive position, and the quality of its management.

Neither the Court nor creditors should have to perform acrobatic feats of financial analysis in order to make an informed judgment about a proposed plan. Nor should a creditor have to wait until an evidentiary hearing to learn that statements or objectives in the Plan are predicated on data that is simplistically or incorrectly stated. Through carelessness or design, this is the case here. The Court had to undertake a detailed scrutiny of the file in this case in order to understand debtor's Fifth Plan of Reorganization (2nd Revision). Debtor never offered the results of the balloting to the Court. We had to perform our own analysis.** We could not decipher from reading the Plan who was impaired and who was not. We had to search the file to ascertain this information.

Debtor presented evidence purporting to support its Fifth Amended Plan (2nd Revision) through its former president, Mr. La-Gue. While we find him to be a credible witness and do not doubt that he has the best intentions, his assurances that he will continue to be involved with the debtor, for up to 10 years, with no compensation strikes us as naive on his part. Moreover, he did not appear to have an adequate understanding of the Plan and all its ramifications. As one instance among many, Mr. LaGue was not aware that the Plan forecasted income and was overstated by a material amount.

Accordingly, we cannot confirm the Fifth Amended Plan (2nd revision) as presented

---

** Analysis of Ballots on Fifth Amended Plan

| Class | Membership | # of Members | Impaired | Ballot |
|---|---|---|---|---|
| 11 | Common Equity Shareholders | unknown | yes | none filed |
| 10 | Unsecured Creditors | 17 | yes | accept |
| 9 | DOT | 1 | no | accept |
| 8 | IRS | 1 | no | accept†† |
| 7 | Avery Inns | 1 | yes | accept†† |
| 6a | Anders | 1 | no | none filed |
| 6b | Anders | 1 | no | none filed |
| 5 | CTC | 1 | no | reject |
| 4 | NSB | 1 | yes | accept†† |
| 3 | City of Montpelier | 1 | no | none filed |
| 2 | Wages | 1 | no | none filed |
| 1 | Priorities | 4 | no | none filed |

†† Changed ballot by representation of counsel to Court.

to this Court. We do believe, however, that debtor may remedy the defects of its presentation and so grant the debtor time to file another Plan and solicit acceptances.

### Other Matters

Several other matters were heard at the evidentiary hearings on September 9, 1985 and October 17, 1985. A motion for conversion pursuant to 11 U.S.C. Section 1112 was filed by CTC. Based on the evidence presented at both hearings, CTC's motion is denied as premature. We grant permission to renew the motion on the papers presently filed with the Court if debtor cannot amend its Plan within 30 days of this Order.

Debtor applied to this Court to invoke 11 U.S.C. Section 1129(b). Since the "cramdown" provision of 11 U.S.C. 1129(b) is moot at this time, debtor's application is dismissed. If debtor intends to invoke Section 1129(b) in its next Amended Plan, it must do so contemporaneously with any hearing to confirm its Amended Plan.

A shareholder, John M. Kilmurry, through his attorney, has moved the Court for additional time to file a modified Plan if debtor fails to have its Fifth Amended Plan of Reorganization (2nd revision) confirmed. This motion is denied because debtor should have the time necessary to file an Amended Plan that conforms to this Order unfettered by interference from the creation of an opposing Plan by an insider. Accordingly,

It is ORDERED that:

1) Debtor's Fifth Amended Plan of Reorganization, 2nd revision, is denied confirmation.

2) Chittenden Trust Company's objection regarding the adequacy of disclosure is sustained.

3) Chittenden Trust Company's objections regarding impairment and discriminatory treatment are denied.

4) Debtor is given until January 20, 1986 to submit a sixth Amended Plan of Reorganization.

5) Chittenden Trust Company is granted leave to refile its motion to convert pursuant to 11 U.S.C. Section 1112(b) if debtor does not file an Amended Plan by January 20, 1986.

6) Creditor John Kilmurry's motion for additional time to file a modified Plan is denied.