In re MONCLOVA CARE CENTER, INC., Debtor.

No. 93–32226.

United States Bankruptcy Court,
N.D. Ohio.

May 25, 2000.

Bruce S. Schoenberger, Toledo, OH, for Swan Pointe Care Center Inc.

Derek Rippy, Cleveland, OH, for U.S. Trustee.

Henry Riordan, Dept. of Justice, Tax Division, Washington, D.C., for U.S.A.

Mary Ann Whipple, Toledo, OH, for John N. Graham.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Amended Motion for Summary Judgment and Memorandum in Support submitted by the Internal Revenue Service in opposition to the Trustee's Motion to Confirm Distribution of the Debtor's assets. In support of its Motion to Confirm Distribution, the Trustee submitted a Memorandum in Support, and a Memorandum in Opposition to the Internal Revenue Service's Amended Motion for Summary Judgment. This Court has now had the opportunity to review the arguments of counsel, the exhibits, as well as the entire record in the case. Based upon that review, and for the following reasons, the Court finds that the Amended Motion for Summary Judgment submitted by the Internal Revenue Service should be Granted in part and Denied in part.

### FACTS

The facts relevant in this case had their genesis in July of 1993 when the Debtor, Monclova Care Center, Inc. (hereinafter Debtor), commenced the above captioned case under Chapter 11 of the United States Bankruptcy Code. In the bankruptcy schedules originally filed with its petition, the Debtor listed two secured creditors, one of which was the Internal Revenue Service (hereinafter IRS). (Later the Debtor amended its bankruptcy schedules so as to reflect that the IRS was the only secured creditor.) In response to the Debtor's bankruptcy petition, the IRS filed a proof of claim, which was later amended, reflecting an obligation owed by the Debtor in the amount of Two Hundred Fifty-two Thousand Six Hundred Eight and 00/100 dollars ($252,608.00). Of this amount, the IRS classified Two Hundred Thirty-eight Thousand Seven Hundred Sixty-five and 71/100 dollars ($238,765.71) as a prepetition secured claim, and Thirteen Thousand Eight Hundred Forty-two and 29/100 dollars ($13,842.29) as a prepetition unsecured priority claim. Included within the amounts listed in its proof of claim were all the prepetition penalties which had accrued on the Debtor's tax obligation with the IRS. The IRS, however, in its proof of claim, did not request the allowance of any postpetition interest that would become due on its claim.

Approximately one year after the Debtor's Bankruptcy Case was commenced, John Graham was appointed as the Debtor's Chapter 11 Trustee pursuant to 11 U.S.C. § 1104(a). While Trustee, Mr. Graham (hereinafter referred to as the Trustee) proposed a liquidating plan of reorganization for the Debtor. In this proposed Plan of Reorganization, the claim submitted by the IRS, against which the Trustee did not object, was classified according to its secured and unsecured components, and provided that each component would be left "unimpaired" under the Plan. In addition, according to the terms of the Debtor's Plan, all the claims against the Debtor's estate would be satisfied through the purchase of the Debtor's assets by a company named Facility Providers, Inc., with the agreed upon purchase price of the Debtor's assets essentially equaling the aggregate amount of all the claims that would be allowed against the Debtor's estate. On April 4, 1996, the Debtor's Liquidating Plan of Reorganization was confirmed by the Court without objection by the IRS.

Not long after confirming the Debtor's Plan of Reorganization, the Trustee, as disbursing agent, commenced making distributions on the claims allowed in Debtor's Plan. However, at this time, certain issues concerning the amount owed on the claim submitted by the IRS were raised. Specifically, the IRS asserted that it was statutorily entitled to postpetition and postconfirmation interest on its claim, and that such interest was continuing to accrue. As a consequence of this assertion, the Trustee, while attempting to resolve this matter, delayed payment to the IRS in contemplation of a resolution. However,

with no imminent resolution forthcoming, the Trustee eventually disbursed to the IRS a total of One Hundred Ninety-seven Thousand Six Hundred Twenty-eight and 97/100 dollars ($197,628.97) on its claim, the amount of which excluded any prepetition penalties and postpetition interest which had accumulated on the proof of claim submitted by the IRS. The check sent to the IRS was then cashed.

On April 26, 1999, the Trustee filed a Motion to Confirm Distribution to the IRS. In response thereto, the IRS filed an Objection stating that, in addition to the money it has already received, it was also entitled to an additional Two Hundred Three Thousand Four Hundred Seventy-three and 14/100 dollars ($203,473.14) on the secured and priority portions of its claim on account of accruing interest. On this issue the IRS then filed a Motion for Summary Judgment in accordance with Bankruptcy Rule 7056.

### DISCUSSION

Determinations concerning the administration of the debtor's bankruptcy estate, and the allowance or disallowance of claims against the estate are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(A) & (B). Thus, this case is a core proceeding.

 The primary and ultimate goal in any Chapter 11 case is for the debtor to formulate, and then have confirmed by the court, a viable plan of reorganization; a goal which was accomplished in this case on April 4, 1996, when this Court confirmed the Debtor's Liquidating Plan of Reorganization. *See, e.g., In re Great American Pyramid Joint Venture*, 144 B.R. 780, 788 (Bankr.W.D.Tenn.1992). A fundamental principle with regards to a confirmed Chapter 11 plan, which is really nothing more than a new contract between the parties, is that all the prior obligations and rights of the parties subject to the plan are extinguished and replaced by the terms of the Plan. *In re Sugarhouse Realty, Inc.*, 192 B.R. 355, 362 (E.D.Pa.1996). Thus, once a Chapter 11 plan is confirmed,

issues that could have been raised prior to confirmation cannot be revisited, and any dispute(s) between the Parties must be resolved by reference to the plan itself. *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques)*, 930 F.2d 458, 463 (6th Cir.1991) (holding that confirmation of a plan of reorganization has the effect of a judgment and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings). This principle is codified in § 1141(a) of the Bankruptcy Code which provides, in part, that, "the provisions of a confirmed plan bind the debtor ... and any creditor ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan."

In conformance with the Debtor's Chapter 11 Plan of Reorganization, the Trustee has requested that this Court confirm the One Hundred Ninety-seven Thousand Six Hundred Twenty-eight and 97/100 dollars ($197,628.97) in estate assets distributed to the IRS on the grounds that this distribution was in conformance with the Liquidating Plan of Reorganization formulated by the Trustee on behalf of the Debtor. The IRS, however, has objected thereto, and asserts, through its Amended Motion for Summary Judgment, that it is entitled to the following forms of relief with respect to the Trustee's distribution of estate assets on its claim.

First, with regards to the secured portion of its claim, the IRS seeks the prepetition penalties which had accrued on the Debtor's tax obligation, and which were listed in the IRS's amended proof of claim. Second, the IRS requests that the Trustee be required to pay to it all the postpetition interest that has accrued on the secured portion of its tax claim. Third, the Trustee also asks that the Trustee be required to pay to it any and all of the postconfirmation interest that has accrued on both the secured and unsecured portions its claim. With regards to the latter two requests, the IRS seeks such relief even

though it did not request it through its amended proof of claim. Finally, the IRS seeks from the Trustee any other form(s) of relief which the Court would deem just and proper, including, but not limited to, an award of attorney fees.

In support of these requests, the IRS has set forth what are essentially three (3) different legal arguments. First, with regards to prepetition penalties, the IRS asserts that as such penalties are allowable as a part of a proof of claim, the failure of the Trustee to timely object to the claim submitted by the IRS now bars litigation of this matter. Second, in support of receiving postpetition interest on its secured claim, the IRS contends it is an oversecured creditor, and thus entitled to postpetition interest pursuant § 506(b) of the Bankruptcy Code. Finally, the IRS argues that it is entitled to both postpetition and postconfirmation interest on the basis that the Debtor's Plan of Reorganization provided that both the secured and unsecured portions of its claim would be left unimpaired. The Court will now address each of these legal arguments in order. However, based upon the binding nature of a confirmed Chapter 11 Plan, this Court's analysis, with respect to the legal arguments raised by the IRS, will, where appropriate, be strictly confined to addressing the relevant provisions contained in the Debtor's Chapter 11 Plan of Reorganization. In addition, as the IRS has sought relief by way of a Motion for Summary Judgment, the relief requested will only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.BANKR.P. 7056; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In making this determination all inferences drawn from the underlying facts will be viewed in a light most favorable to the Trustee as the party opposing the Motion. *Matsushi-*

*ta v. Zenith Radio Corp.*, 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also In re Bell*, 181 B.R. 311 (Bankr.N.D.Ohio 1995).

In its amended proof of claim, the IRS seeks Fifty-four Thousand Nine Hundred Seventy-nine and 03/100 dollars ($54,-979.03) in prepetition penalties. It is clear that such penalties, if submitted with an allowable claim, are permissible. *Bondholder Comm. v. Williamson County, Tennessee (In re Brentwood Outpatient, Ltd.)*, 43 F.3d 256, 263 (6th Cir.1994). In this case, there is no dispute between the Parties that the amended proof of claim submitted by the IRS against the estate of the Debtor qualifies, at least in part, as both an allowed secured claim and an allowed priority claim pursuant to the Debtor's Chapter 11 Plan. In fact, the Trustee, as mentioned earlier, has already paid One Hundred Ninety-seven Thousand Six Hundred Twenty-eight and 97/100 dollars ($197,628.97) on the secured and priority portions of the claim submitted by the IRS. However, in opposition to the IRS's entitlement to the more than Fifty Thousand dollars ($50,000.00) in prepetition penalties listed in its amended proof of claim, the Trustee asserts that because the Purchase Price of the Debtor's assets, by Facility Providers Inc., excluded prepetition penalties under the Asset Purchase Agreement, such penalties should be disallowed under the Debtor's Plan. In support thereof, the Trustee points to the provision of the Debtor's Asset Purchase Agreement which holds that the purchase price of the Debtor's assets shall not include the payment of those claims which in terms of priority of distribution fall below the level of § 726(a)(2). Therefore, in accordance with this provision, the Trustee maintains that since the purchase price of the Debtor's assets essentially equaled the sum of all the claims allowed against the Debtor's estate, and since the distribution of penalties clearly fall below the priority level of

§ 726(a)(2),[1] the claim for prepetition penalties filed by the IRS was excluded by the Debtor's Asset Purchase Agreement.

■ The difficulty, however, the Court has with this argument is that the Debtor's Chapter 11 Plan, and not the Asset Purchase Agreement, controls the allowance or disallowance of the IRS's right to prepetition penalties. 11 U.S.C. § 1141; *Holly's, Inc. v. City of Kentwood (In re Holly's, Inc.)*, 172 B.R. 545, 565–66 (Bankr. W.D.Mich.1994). As a consequence, in order for the terms of the Debtor's Asset Purchase Agreement to govern the scope of the claim submitted by the IRS, there must exist language in the Debtor's Plan which would exhibit an intent to incorporate the Asset Purchase Agreement therein. The Court, however, after closely examining the Debtor's Chapter 11 Plan finds, that although there is language in the Plan which reference the Asset Purchase Agreement, there does not exist any specific language incorporating that Agreement into the Debtor's Plan of Reorganization. Consequently, the Court finds that at the very least the language contained in the Debtor's Asset Purchase Agreement vis-a-vis the Debtor's Chapter 11 Plan, creates an ambiguity as to whether prepetition penalties are included within the scope of the claim submitted by the IRS. Accordingly, as ambiguities contained in a Chapter 11 plan are interpreted so as to comport with, rather than contravene, express provisions of the Bankruptcy Code, this Court will determine the allowance of the IRS's claim for prepetition penalties by reference to applicable bankruptcy law. *In re Jankins*, 184 B.R. 488, 492 (Bankr.E.D.Va.1995) (chapter 11 plan

that was silent on whether interest would be paid on priority tax claims would be construed in accordance with the Bankruptcy Code).

■ Section 502 of the Bankruptcy Code governs the allowance of claims in bankruptcy and provides, in part, that a claim that comports with § 501 of the Bankruptcy Code "is deemed allowed, unless a party in interest ... objects." Thus, § 502 establishes the general rule that even if a proof of claim is clearly objectionable, the failure of a party in interest to actually interpose an objection to the claim causes that claim to be allowed. *See In re Willis*, 157 B.R. 617, 621 (Bankr. N.D.Ohio 1993). However, if a party in interest does object to a creditor's proof of claim, then under § 502(b) the bankruptcy court, after notice and hearing, is to determine the lawful amount of that claim subject to any of the specifically enumerated limitations contained in § 502(b) (e.g., unmatured interest under § 502(b)(2)).

■ In this case there is no dispute between the Parties that the Trustee did not raise a formal objection to the proof of claim submitted by the IRS prior to the time the Court confirmed the Debtor's Liquidating Plan of Reorganization. Thus, based upon this fact, it would appear that the Trustee is now precluded from objecting, through its Motion to Confirm Distribution, to the allowance of the prepetition penalties claimed by the IRS. However, Bankruptcy Rule 3007, which sets forth the requirements for filing an objection to a proof of claim, imposes no time limit for filing such an objection, and instead simply requires that such an objection be in writing and filed with the Court.[2] As a conse-

---

1. The distribution of penalties occurs at level (a)(4) of § 726 which provides that, "property of the estate shall be distributed in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or

damages are not compensation for actual pecuniary loss suffered by the holder of such claim[.]"

2. Bankruptcy Rule 3007 provides, inter alia, that "[a]n objection to the allowance of a claim shall be in writing and filed. A copy of the objection with notice of the hearing thereon shall be mailed or otherwise delivered to

quence, it would not technically be in contravention of Bankruptcy Rule 3007, or for that matter the Bankruptcy Code, to treat the Trustee's Motion to Confirm Distribution as an objection to the proof of claim submitted by the IRS. Nevertheless, for the reasons previously expounded upon regarding the finality of a confirmed Chapter 11 Plan, this Court finds that a practical and necessary facet of a Chapter 11 case is that, unless otherwise approved by the Court or provided for by the plan, all objections to proofs of claims must be submitted prior to the order of confirmation, a position which is thoroughly supported by applicable case law. *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enterprises, Inc.),* 81 F.3d 1310, 1318 (4th Cir.1996); *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.),* 898 F.2d 1544, 1553 (11th Cir.1990), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990); *In re Clark,* 172 B.R. 701, 704 (Bankr.S.D.Ga. 1994). In this regard, the Court observes that to hold otherwise would allow creditor's, dissatisfied with a debtor's confirmed plan, a second chance to litigate issues regarding their claims, and thus would invite protracted litigation, a result which is clearly at odds with the rehabilitative nature of a Chapter 11 bankruptcy. Accordingly, in this case, since the Trustee did not interpose a preconfirmation objection to the proof of claim submitted by the IRS, the Court will allow as a claim against the estate of the Debtor those prepetition penalties which were set forth in the proof of claim submitted by the IRS.

■ The IRS next argues that, as an oversecured creditor, it is entitled to postpetition interest on its secured claim. In support thereof, the Trustee cities to § 506(b) [3] which provides, in contravention to the normal rule against the allowance of such interest, that an oversecured may recover postpetition interest on their claim up to the value of their collateral. In opposition to the applicability of § 506(b), the Trustee raises what are essentially two points of contention. First, the Trustee argues that there exist genuine issues of material fact as to whether the IRS was, in fact, an oversecured creditor within the meaning of § 506(b). However, with regards to this argument, it is apparent to the Court that the IRS is, by definition, an oversecured creditor as the purchase price of the Debtor's assets was, at a minimum, equal to that of all the claims submitted by the IRS. Hence, there would have at all times existed excess equity in the claim submitted by the IRS. The second point of contention raised by the Trustee holds that as the IRS, in its amended proof of claim, did not ask for postpetition interest under § 506(b), it is now precluded from receiving such interest.

In the case of *In re Brenner,* 189 B.R. 121, 127 (Bankr.N.D.Ohio 1995), to which the Trustee cites in support, this Court had the opportunity in a Chapter 13 case to visit the issue regarding the allowance of postpetition interest under § 506(b), when a debtor's plan, like the situation in the present case, did not provide for the allowance of such interest. In that decision,[4] the Court, after going through a thorough analysis of the pertinent case law, held that even if a creditor had included in its proof of claim the fact that it was seeking postpetition interest under § 506(b), that such interest was not allowable after a debtor's plan had been confirmed. *Id.* In making this decision, the Court observed that "the policy regarding

the claimant, the debtor or debtor in possession and the trustee at least 30 days prior to the hearing."

**3.** Section 506(b) states "[t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose."

**4.** Coincidentally, the *In re Brenner* decision also involved the IRS as a party.

the binding nature of the confirmed plan outweighs the policy of a secured creditor receiving post-petition interest on its claim when such interest was not provided for in the plan." *In re Brenner,* 189 B.R. 121, 127 (Bankr.N.D.Ohio 1995). However, what makes this case distinguishable from the *In re Brenner* decision is that the debtor in *In re Brenner* had in its Chapter 13 plan wrongly, although inadvertently, classified the creditor's secured claim as unsecured. Thus, because of this mistake, this Court in *In re Brenner* found that the creditor was precluded by the Plan from asserting its status as a secured creditor for purposes of recovering postpetition interest under § 506(b). *Id.* ("[w]hen the plan does not even treat the claim as secured, the [creditor] could only have concluded that no interest would be paid on its oversecured claim."). In this case of course, such is not the case, as the claim submitted by the IRS, although not mentioning a right to postpetition interest under § 506(b), was classified, in part, in the Debtor's Plan as a secured claim; thus raising the issue in this case as to whether interest under § 506(b) must be affirmatively asserted (e.g., through a proof of claim) or whether such interest is inherent in the nature of a claim under § 506(b).

The purpose of § 506(b) has been described as a device by which a secured creditor is able to realize the largest possible amount of recovery from its security interest since that was the expectation underlying the claim. *Rozel v. IRS (In re Rozel Indus., Inc.),* 120 B.R. 944, 952 (Bankr.N.D.Ill.1990); *In the Matter of Vincent and Barbara Lapiana,* 909 F.2d 221, 223 (7th Cir.1990) ("until the secured creditor's claim plus interest has eaten up the entire value of the security the payment of that interest does not infringe the reasonable expectations of any other creditor"). In *U.S. v. Ron Pair Enterprises, Inc.,* the Supreme Court had the opportunity to address the permissibility of postpetition interest under § 506(b) and held

that the statute should be interpreted according to its plain meaning. 489 U.S. 235, 241–42, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989). In this regard, the key language under § 506(b), with respect to the issue at hand, is contained in the latter part of the provision where it is stated that "there shall be allowed to the holder of such claim, interest on such claim . . . ." (the words "such claim" in § 506(b) refer to an oversecured claim. *Id.*). According to the Supreme Court, the natural reading of this phrase entitles the holder of an oversecured claim to postpetition interest. *Id.* Thus, given this holding, and the mandatory nature of § 506(b), it seems apparent that regardless of whether a creditor in their proof of claim asserts a right to postpetition interest, such interest automatically becomes a part of a creditor's claim. As such, it follows that a creditor should not be absolutely required in its proof of claim to make a declaration that it is seeking postpetition interest. (Although it would still be highly advisable to do so as the Court, based upon equitable principles, could disallow such a claim.) *See Still v. State of Tennessee Dep't of Revenue (In re Rogers),* 57 B.R. 170, 174 (Bankr.E.D.Tenn.1986). Notwithstanding, this does not mean that in every instance an oversecured creditor is entitled to actually receive postpetition interest. Instead, it is clear that an oversecured creditor's claim may be qualified by a confirmed plan of reorganization, and the right to receive postpetition interest is therefore subject to any limitation contained in a debtor's plan of reorganization. *See generally, Fawcett v. United States (In re Fawcett),* 758 F.2d 588 (11th Cir.1985).

Upon examining the Debtor's Chapter 11 Plan, however, the Court, with respect to how the Debtor's Plan treats "Allowed Secured Claims," cannot find any language therein that would limit the ability of the IRS to recover the postpetition interest that has accrued on its secured

claim under § 506(b).[5] Once more, this omission does not seem inadvertent as Article III, ¶ 3.3, of the Debtor's Plan of Liquidation, which governs the treatment of Allowed *Unsecured* Claims, provides that such claims will only be paid on the "principal" amount of their claim. Accordingly, given these considerations, the Court is constrained to interpret the Debtor's Plan against the party who drafted the document, to wit: the Trustee, and thus, under the facts of this case, the claim submitted by the IRS is entitled to postpetition interest under § 506(b). *See Id.* at 591 (ambiguous terms of a Plan should, in appropriate circumstances, be interpreted against the party who drafted the document). The Court now turns to address the last substantive legal issue raised by the IRS.

In its Motion for Summary Judgment, the IRS asserts that "[i]n order to ensure that the United States' claim is not impaired as promised, this Court should order [the Trustee] to pay, along with postpetition interest on its secured claim, postconfirmation interest on its secured claim and its unsecured priority claim, as required by the bankruptcy plan." (United States' Memorandum in Support of its Amended Motion for Summary Judgment Regarding Motion to Confirm Distribution at 10). Thus, the question presented to the Court by this assertion can be framed as this: Does the failure of the Trustee to pay to the IRS both postpetition and postconfirmation interest impair the IRS's claim within the meaning of the Debtor's Chapter 11 Plan?

In Article III of the Debtor's Plan of Reorganization, which is entitled "Treatment of Claims and Interest," it is provid-ed that all Allowed Secured Claims and all Allowed Priority Claims "are not impaired under the Plan." The Debtor's Chapter 11 Plan, however, does not actually specify under what conditions a claim is or is not impaired. Nevertheless, the Debtor's Plan does state that, "[a]ny term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or in the Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or in the Bankruptcy Rules." (Article I, ¶ 1.1, Debtor's Plan of Liquidation). Thus, given this provision of the Debtor's Plan, the Court will utilize the meaning the Bankruptcy Code confers upon the word "impaired" to determine if the Trustee's exclusion of postpetition and postconfirmation interest would impair the IRS's claim under the Debtor's Liquidating Plan of Reorganization.

Section 1124 governs under what conditions a claim will be deemed to be impaired in a Chapter 11 bankruptcy, and provides, inter alia, that:

> Except as provided in section 1123(a)(4) of this title, a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan—
>
> (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest;

In addressing the meaning of the word "impaired" under § 1124, courts have consistently given the term a very broad interpretation, and thus any alteration in a creditor's legal rights or privileges constitutes an impairment. *In re Club Associates,* 107 B.R. 385, 401 (Bankr.N.D.Ga. 1989). For example, even an improvement

---

**5.** With respect to the Treatment of "Allowed Secured Claims," which the Debtor's Plan categorizes as Class 1 claims, the Debtor's Plan provides that, "Allowed Secured Claims are not impaired under the Plan. There are only two asserted Class 1 Claims against the Debtor. To the extent they are determined to be secured, the defaults, if any, respecting such security interests shall be cured on the Effective Date and the legal, equitable, and contractual rights to which Class 1 Claims entitle the holder thereof shall remain unaltered by the Plan or, at the option of the Trustee, such claims shall be treated in any other manner that shall result in such Claims being deemed unimpaired under Section 1124 of the Bankruptcy Code." (Article III, ¶ 3.1, Debtor's Plan of Liquidation.)

in a creditor's rights can constitute an impairment under a Chapter 11 Plan. *In re Union Meeting Partners*, 160 B.R. 757, 771 (Bankr.E.D.Pa.1993). Nevertheless, not every conceivable alteration in a creditor's rights constitutes an impairment for purposes of § 1124(1). Instead, impairment as used by § 1124 simply refers to that part of a debtor's Plan which addresses the treatment of a debtor's claim, and in this regard, a distinction must be drawn between the concept of "plan impairment" and "statutory impairment," with only the former constituting an impairment within the meaning of § 1124. *In re PPI Enterprises (U.S.), Inc.*, 228 B.R. 339, 354 (Bankr.D.Del.1998).

For purposes of § 1124 "plan impairment" can be defined as the alteration of a debtor's rights under their claim, while "statutory impairment" can be described as what occurs when the Bankruptcy Code itself alters the debtor's rights under nonbankruptcy law. *Id.* at 353. This distinction is necessary, as without it, the filing of a bankruptcy case itself would constitute an impairment, a result clearly in contradiction to the intention of the statute. *In re American Solar King Corp.*, 90 B.R. 808, 820 (Bankr.W.D.Tex.1988). In applying the distinction between "plan impairment" and "statutory impairment" however, some courts have held that a creditor's right to have his claim in bankruptcy remained "unimpaired" only applies with respect to those claims that would constitute an "allowed claim" under § 502(b) of the Bankruptcy Code. For example, in *In re PPI Enterprises (U.S.), Inc.*, the bankruptcy court held that the cap placed on an allowable claim for rent damages under § 502(b)(6) also similarly limits the degree in which a claim could be impaired for purposes of § 1124. 228 B.R. at 354; *see also In re American Solar King Corp.*, 90 B.R. 808, 821 (Bankr.W.D.Tex.1988) (sub-

ordination under 11 U.S.C. § 510(b) does not impair a creditor's claim). This approach, if taken a step further would support the Trustee's position on the disallowance of postpetition and postconfirmation interest as § 502(b)(2) provides that "unmatured" interest is not an "allowed claim." *In re Tavern Motor Inn, Inc.*, 56 B.R. 449 (Bankr.D.Vt.1985). Other courts, however, have disagreed with this approach and have held that regardless of whether or not a claim is allowed under § 502, a claim is only actually impaired under § 1124 if the plan alters that creditor's claim with respect to the meaning attached to the word "claim" by the Bankruptcy Code. *In re Seasons Apartments, Ltd. Partnership*, 215 B.R. 953, 959 (Bankr.W.D.La.1997) (holding a creditor's 'claim,' and not their 'allowed claim' must be left unaltered).

 After considering both of these positions, the Court finds that the latter position is better supported in law, as nowhere in § 1124 is there actually imposed a requirement that "impairment" only applies with respect to "allowed claims." In making this decision, the Court notes that it is a basic principle of statutory construction that courts should presume that Congress knew, and meant to adopt, the background legal concepts associated with the words that it chose to incorporate into a law. *United States v. Meade*, 175 F.3d 215, 218 (1st Cir.1999) *citing Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952). In addition, the Court observes that had Congress wanted to limit the applicability of the word "impaired" under § 1124(1) to only "allowed claims," it certainly knew how to do so considering that paragraph (3) of § 1124,[6] which was deleted in 1994, utilized that term. Thus, given these considerations, the Court must find that the IRS's claim is

---

**6.** Section 1124(3) stated, in pertinent part, that: "a class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan provides that, on the effective date of the

plan, the holder of such claim or interest receives, on account of such claim or interest, cash equal to (A) with respect to a claim, the allowed amount of such claim."

impaired within the meaning of § 1124, unless the Debtor's Plan leaves entirely unaltered those rights afforded to the IRS by virtue of its "claim."

As touched upon earlier in this Court's analysis of § 506(b), it is a fundamental principle of bankruptcy law that creditors are generally not entitled to recover postpetition interest on their claims. However, as also touched upon earlier, this rule does not mean that a creditor's right to postpetition interest is entirely eliminated by virtue of the bankruptcy filing. *See, e.g.,* § 726(a)(6) (contemplating distribution of interest payments after various other claims have been paid in full). Instead, while § 502(b)(2) may disallow postpetition interest in most cases, such interest still remains a part of a creditor's "claim," as that term is defined by the Bankruptcy Code. *In re Butler,* 242 B.R. 553 (Bankr. S.D.Ga.1999).

▬ The Bankruptcy Code defines a claim, in part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5). A close inspection of this definition, which was purposefully made very broad, shows that specifically included within the scope of a claim under § 101(5) is a claim for "unmatured" interest.[7] Thus, given this fact, it seems evident that Congress meant to include within the framework of a claim under § 101(5) those interest payments, whether postpetition or postconfirmation, that would accrue after a debtor filed for bankruptcy as long as the creditor had a right (although not necessarily a present right) to that interest payment prior to the debtor filing for bankruptcy. In fact, to hold otherwise would lead to rather absurd results. For example, if a claim did not encompass both postpetition and postconfirmation interest, then conversely a

debtor would not be entitled to receive a bankruptcy discharge on such postpetition interest. To illustrate, when a debtor receives a bankruptcy discharge, he or she is thereafter relieved of his or her legal liability to pay his debts, with the Bankruptcy Code defining a debt as simply a "liability on a claim[.]" 11 U.S.C. § 101(12). Thus, given this definition, a claim and a debt can simply be viewed as two sides of the same coin, with the former being from the perspective of a creditor, while the latter is from the perspective of a debtor. *King v. King (In re King),* 214 B.R. 69, 78 (Bankr.D.Conn.1997). As a consequence, if a debt, and therefore by implication a claim, did not encompass both postpetition and postconfirmation interest, then a debtor would not be entitled to receive a discharge on such postpetition interest, a result clearly in contradiction to the broad scope afforded by Congress to a bankruptcy discharge. *Piper Aircraft Corp. v. Calabro (In re Piper Aircraft Corp.),* 169 B.R. 766, 777 (Bankr.S.D.Fla.1994) (events listed in § 101(5) are postpetition events which are deemed to have arisen prepetition); *Household Finance Corp. v. Hansberry (In re Hansberry),* 20 B.R. 870, 872 (Bankr.S.D.Ohio 1982) (rule that postpetition interest is not allowable does not negate substantive rights of the parties under § 101(5)). Consequently, for these reasons, the Court finds that the Trustee's failure to pay the IRS both postpetition and postconfirmation interest would not leave unaltered those rights afforded to the IRS by virtue of its claim against the Debtor's bankruptcy estate. Accordingly, as the Debtor's Chapter 11 Plan of Reorganization had classified the claim submitted by the IRS as unimpaired, the IRS is entitled to both postpetition and postconfirmation interest on its claim. In this regards, the Court notes that this result is generally consistent with the rule that in a Chapter 11 case claims are presumed to

---

7. This of course assumes that interest payments constitute a "right to payment" within

the meaning of 11 U.S.C. § 101(5).

be impaired so as to enable a creditor to vote on acceptance of the plan. *In re Seasons Apartments, Ltd. Partnership,* 215 B.R. 953, 958 (Bankr.W.D.La.1997). To put it differently, if a debtor (or a trustee for the debtor) chooses to classify a creditor's claim as unimpaired so as to prevent that creditor from voting on the debtor's plan of reorganization, then that debtor also assumes all the legal obligations to which the creditor is entitled to under their claim.

Notwithstanding the forgoing holdings regarding the IRS's entitlement to both postpetition and postconfirmation interest, the Court does not find, as is asserted by the IRS, that such interest continues to accrue up to the present day. Instead, this Court holds that once the Debtor's Chapter 11 Plan was completed, the IRS's entitlement to interest payments on its claim also ceased. As this case was a liquidating Chapter 11, the Court finds this date to be the "Effective Date" of the Debtor's Plan, as that date is defined in the Debtor's Plan. *See generally, Rake v. Wade,* 508 U.S. 464, 468, 113 S.Ct. 2187, 2190, 124 L.Ed.2d 424 (1993) ("[i]t is generally recognized that the interest allowed by § 506(b) will accrue until payment of the secured claim or until the effective date of the plan."). In making this decision, the Court observes that this holding essentially places the IRS in the same position had the Debtor's case been converted to a Chapter 7 Bankruptcy.

Before concluding, one final issue must be addressed. The IRS in its Motion for Summary Judgment requested that it be awarded any other form(s) of relief which the Court would deem just and proper, including, but not limited to, an award of attorney fees. The Court, however, after considering this request, believes that as the legal positions taken by the Trustee were reasonable and not meant simply to harass, the IRS is not entitled to such an award. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (in cases brought under federal law, the general rule is that absent a specific statutory authority, a contractual right or aggravated conduct, attorneys' fees are not recoverable as costs).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Summary Judgment Motion submitted by the Internal Revenue Service, be, and is hereby, GRANTED in part and DENIED in part.

It is **FURTHER ORDERED** that Trustee pay, as a part of the Claim submitted by the Internal Revenue Service, the prepetition penalties listed in the amended proof of claim filed by the Internal Revenue Service.

It is **FURTHER ORDERED** that Trustee pay, as a part of the Claim submitted by the Internal Revenue Service, all postpetition and postconfirmation interest that would have lawfully accumulated up through the effective date of the Debtor's Chapter 11 Plan of Reorganization.